JOANNE KNOTT HAMLIN (WHITT) v. JOSEPH JOHN HAMLIN III

No 55

(Filed 7 April 1981)

**1. Divorce and Alimony § 25; Infants § 6— child custody and visitation hearing — absence of father**

While the trial court should ordinarily require the presence of both parents at a child custody and visitation hearing so that the court might better evaluate the character and fitness of each parent, the trial court in this particular case did not err in conducting a hearing on a motion to modify a child custody and visitation order without the presence of defendant father where defendant had been working in Alaska for several years and his job schedule was the reason for his absence at the hearing; the child was 14 years of age when the order appealed from was entered and nothing in the record suggested that he had any physical or mental disability; defendant's present wife and his parents were present at the hearing; numerous hearings had been conducted with respect to the child's custody and visitation since 1973; defendant was represented at the hearing by the same attorney who had represented him in this matter since 1974; and the attorney had a written power of attorney from defendant which authorized the attorney "to guarantee in my name and bind me to comply with the orders of the court, as fully and completely as if I were present in court."

**2. Rules of Civil Procedure § 7— sufficiency of motion — failure to state rule number**

Defendant's motion for modification of a child visitation order was sufficient to comply with the requirements of G.S. 1A-1, Rule 7(b)(1), and plaintiff was not prejudiced by failure of defendant to state the number of the rule under which he was proceeding as required by Rule 6 of the General Rules of Practice for the Superior and District Courts.

Justice CARLTON dissenting.

Jutice HUSKINS joins in the dissent.

APPEAL by plaintiff from the decision of the Court of Appeals affirming order of *Gash, Judge,* entered at the 11 July 1979 Session of RUTHERFORD District Court.

This appeal is another chapter in the long controversy between

Hamlin v. Hamlin

the parties relating to visitation by their son, John, with defendant, his father. The history of the controversy is summarized as follows:

On 31 August 1973, Judge Matheney entered a judgment in an action brought by defendant herein against plaintiff herein seeking, among other things, custody of John. The court found extensive facts including findings that defendant father was living and working with his parents on a dairy farm in Rutherford County; that plaintiff mother was teaching school in Person County and living with her mother; that plaintiff and defendant were fit and suitable persons to have custody of John; that plaintiff's mother and other members of her family and defendant's parents were all of good character and would have wholesome influences on John; but that it would be in John's best interests that his mother be granted primary custody. The court provided that the mother be awarded primary custody of the child but that the father be awarded temporary custody for three months during the summer. The judgment further provided that John might visit with his father every third weekend during the winter months and with his mother every third weekend during the summer months.

On 6 March 1974 plaintiff instituted this action seeking an absolute divorce from defendant on the ground of one-year's separation. She alleged that the parties were married to each other on 5 December 1964 and that they had separated on 5 March 1973. She also asked for permanent custody of their son, Joseph John Hamlin IV, who was born on 15 September 1965.

Defendant answered, admitting that plaintiff was entitled to an absolute divorce, but counterclaimed with the request that he be awarded permanent custody of John.

On 1 May 1974, plaintiff was granted an absolute divorce by Judge Gash. At the 17 June 1974 session of the court, a hearing was held on plaintiff's motion to modify the custody judgment which had been previously entered in the matter by Judge Matheney. In her motion plaintiff sought an award of full-time custody of John. At the conclusion of the hearing, Judge Gash entered an order denying the motion on the ground that no showing had been made of a change in circumstances since the entry of the original judgment. In the same order, the judge denied plaintiff's motion for a change of venue to Person County, concluding that the ends of justice would not be served by such an action. Judge Gash also ordered that an

Hamlin v. Hamlin

action which had been previously filed by defendant relating to custody be consolidated with the present action.

On 14 October 1977 the parties filed a document entitled "AGREEMENT AND STIPULATION TO AMENDMENT OF JUDGMENT". The document recites that in the summer of 1975 defendant took John to Alaska where defendant was then living; that defendant did not give plaintiff any notice that he was taking John outside of the State of North Carolina; and that defendant had been indicted in Person County for violating the provisions of G.S. § 14-320.1. The parties then agreed that neither of them would thereafter take John outside of North Carolina without the consent of the other or without permission of the court.

At the 26 June 1978 session of the court, Judge Gash conducted a hearing on motions by each party that Judge Matheney's judgment be modified. Plaintiff asked that the judgment be modified so as to forbid defendant from taking John out of the state. Defendant asked that the judgment be modified so as to permit John to spend the summer months with him in Alaska where defendant, his new wife and their children were then residing. On 30 June 1978, following the hearing, Judge Gash entered an order in which he made findings of fact and concluded, among other things, that John should be allowed to visit defendant in Alaska for a period not to exceed 18 days, including travel time. The order further provided that defendant, his present wife and his parents were to execute a good and sufficient bond in the amount of $40,000 to assure John's return to the custody of plaintiff following the visitation. The parties were unable to agree on the form of the bond, and on 15 August 1978 Judge Gash entered an order specifying its form. Defendant gave notice of appeal from the 30 June 1978 order and the 15 August 1978 order but failed to perfect the appeal.

On 29 June 1979 defendant filed a motion asking the court to permit his son, then age 14, to spend four weeks of the summer with defendant and his family in Alaska. On 11 July 1979 Judge Gash conducted a hearing on this motion. Thereafter, on 13 July 1979, he entered an order finding facts and concluding, among other things, that the best interests of John "would be served by making provision for visitation during the remainder of his minority to and with his father". The order provided that John could visit defendant at his home in Alaska for periods not to exceed 45 days, including travel time, and that defendant would pay all costs of travel. The

order further provided that defendant would post a bond in the amount of $40,000 to assure John's return to the custody of plaintiff at the end of the 45-day periods. Judge Gash also approved a bond tendered by defendant and executed by defendant (by his attorney-in-fact), his wife and his parents. Security for the bond was an indenture on real estate belonging to defendant's parents located in Rutherford County.

Plaintiff appealed from the 13 July 1979 order. On 2 September 1980 the Court of Appeals in an unpublished opinion (48 N.C. App. 630, 269 S.E.2d 327 [1980]) written by Judge Webb with Judge Hedrick concurring affirmed the order from which plaintiff appealed. Judge Wells dissented and plaintiff appealed to this court pursuant to G.S. § 7A-30(2).

*Robert W. Wolf and James H. Burwell, Jr., attorneys for plaintiff appellant.*

*Hamrick and Hamrick, by J. Nat Hamrick, for defendant appellee.*

BRITT, Justice.

Plaintiff contends the following issues are presented by this appeal:

1. The Court erred in the proceeding with the hearing of the defendant appellee's purported motion in the absence of the defendant and in the absence of adequate authorization from the defendant appellee for the defendant to be bound by the results of such hearings.

2. The Court erred in proceeding with the hearing on the purported motion and notice filed by the defendant for that said purported motion and notice fails to comply with the requirements of Rule 7 of the North Carolina Rules of Civil Procedure, and also Rule 6 of General Rules of Practice for the Superior Court, supplemental to the Rules of Civil Procedure.

We find no merit in either contention.

[1] Addressing plaintiff's first contention, we note initially that G.S. § 1-11 provides that "[a] party may appear either in person or by attorney in actions or proceedings in which he is represented." In

5 Am. Jur. 2d, Appearance, § 1, we find:

> The term 'appearance' is used particularly to signify or designate the overt act by which one against whom suit has been commenced submits himself to the court's jurisdiction, although in a broader sense it embraces the act of either plaintiff or defendant in coming into court. Generally, however, it is used in former sense, . . . .

The decisions of this court which interpret the quoted statute have dealt generally with the question of representation in court proceedings, whether by counsel or in *propria persona*. We have held that the right is alternative and that a party has no right to "appear" both by himself and by counsel. *See New Hanover County v. Sidbury*, 225 N.C. 679, 36 S.E.2d 242 (1945); *McClamroch v. Colonial Ice Company*, 217 N.C. 106, 6 S.E.2d 850 (1940); *Abernethy v. Burns*, 206 N.C. 370, 173 S.E. 899 (1934).

Nevertheless, our research fails to disclose, and counsel has not cited, any statute, rule of court or decision which mandates the presence of a party to a civil action or proceeding at the trial of, or a hearing in connection with, the action or proceeding unless the party is specifically ordered to appear. Those who are familiar with the operation of our courts in North Carolina know that quite frequently a party to a civil action or proceeding does not appear at the trial or a hearing related to the action or proceeding. A proceeding involving the custody of a child is in the nature of a civil action. *See* G.S. § 50-13.5 (1976 & Cum. Supp. 1979).

In the case at hand, plaintiff argues that she was deprived of the right to call defendant as an adverse witness and cross-examine him. If plaintiff desired to call defendant as a witness she should have had a subpoena issued for him or asked for an order of the court requiring him to be present. The record does not disclose that plaintiff advised the court that she wished to call defendant as a witness. In fact, it appears in the record that at the 11 July 1979 hearing "counsel for both parties stipulated that the evidence had not changed from the evidence offered at the hearing held on June 30, 1978, and that the Court should use its recollection of the evidence then offered, except that during the proceedings, it was stipulated that the defendant appellee no longer owned a residence in the State of Alaska."

Plaintiff also suggests that since defendant was not at the

hearing, he might not be bound by the action of the court. We reject this suggestion for two reasons.

The first reason is that the record reveals that Mr. J. Nat Hamrick and his firm have represented defendant continuously since 1974 when they filed an answer duly verified by defendant. It is well-settled in North Carolina that counsel employed to conduct litigation has complete authority over the action, all that is incident to it, and all other matters which properly pertain to the action. *Better Home Furniture Co. v. Baron*, 243 N.C. 502, 91 S.E.2d 236 (1956); *Coker v. Coker*, 224 N.C. 450, 31 S.E.2d 364 (1944); *Harrington v. Buchanan*, 222 N.C. 698, 24 S.E.2d 534 (1943).

The second reason is that Mr. Hamrick had a written power of attorney from defendant providing as follows:

> I hereby nominate J. NAT HAMRICK my attorney as attorney-in-fact for me to execute any and all undertakings, bonds, agreements, covenants to judgment and any other papers written with regard to the hearing on the custody and visitation of my son, Joseph John Hamlin IV, and to guarantee in my name and bind me to comply with the orders of the court, as fully and completely as if I were present in court.

The power of attorney specifically authorizes Mr. Hamrick, among other things, "to guarantee in my name and bind me to comply with the orders of the court, as fully and completely as if I were present in court". The authority granted by a power of attorney will be presumed to continue in the absence of anything showing a revocation of that authority. *See Morris Plan Industrial Bank v. Howell*, 200 N.C. 637, 158 S.E. 203 (1931).

Our decision today should not be interpreted as a precedent that hearings relating to the custody of children, and their visits with their respective parents, should ordinarily be heard when one of the parents is not present, even though the absent parent appears through a duly authorized attorney. Except in unusual cases, both parents should be present at these hearings, to the end that the trial judge might better evaluate the character and fitness of each parent.

In view of the unusual facts in the case *sub judice*, we think the trial judge was justified in hearing the motion in question without the presence of defendant father. John was 14 years of age when the

order appealed from was entered; he will be 16 in September of this year and nothing in the record suggests that he has any physical or mental disability. The record indicates that defendant has been working in Alaska for several years and that his job schedule was the reason for his absence at the hearing. Defendant's present wife and his parents, John's grandparents, were present at the hearing. Furthermore, it appears that numerous hearings had been conducted with respect to John's custody and his visits since the first hearing in 1973, some of which were attended by defendant. Judge Gash's order dated 30 June 1978 (also relating to visitation privileges) recites that the hearing was conducted at that time without defendant being present by agreement of the parties.

The procedure which was employed by Judge Gash is acceptable when applied to the facts of the present case. However, it would be unacceptable if it were applied as a matter of general practice. In those instances where the court is dealing with matters which affect children of tender years or children with special problems, or when compelling circumstances do not otherwise dictate, the presiding judge should require the presence of both parents so that the court is in the position to gauge what disposition is in the best interest of the child.

[2] With respect to the second question raised by plaintiff, she argues that defendant's "motion" filed on 29 June 1979 should have been dismissed by the trial court for failure to comply with Rule 7(b)(1) of our Rules of Civil Procedure and Rule 6 of the General Rules of Practice for the Superior and District Courts.

G.S. § 1A-1, Rule 7(b)(1) provides:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial or at a session at which a cause is on the calendar for that session, shall be made in writing, shall state the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

Rule 6 of the General Rules of Practice provides in pertinent part that "[a]ll motions, written or oral, shall state the rule number or numbers under which the movant is proceeding. (*See* Rule 7 of Rules of Civil Procedure.)"

Hamlin v. Hamlin

While defendant's motion is inartfully drawn, we agree with the Court of Appeals that it is clear from reading the motion that defendant was asking the court to modify its previous order with respect to John visiting his father during the summer. He gave as his reason a change in circumstances in that defendant had moved to and was working in Alaska. Defendant alleged that he had supported John continuously since the parties separated; that plaintiff not only did not want defendant to see his son but she would not allow John to talk with him on the telephone without her being present.

As to plaintiff's argument that defendant did not comply with Rule 6 of the General Rules of Practice in that he did not state the number of the Rule of Civil Procedure under which he was proceeding, we can perceive no prejudice plaintiff suffered by this omission. *See City of Durham v. Lyckan Development Corp.*, 26 N.C. App. 210, 215 S.E.2d 814, *cert. denied*, 288 N.C. 239, 217 S.E.2d 678 (1975). The philosophy of the General Rules of Practice for the Superior and District Courts is stated in Rule 1 thusly: "They (the Rules) shall at all times be construed and enforced in such manner as to avoid technical delay and to permit just and prompt consideration and determination of all the business before them."

Since the written motion filed by defendant fully informed plaintiff of the relief he was seeking and his reasons therefor, we hold that the trial court did not err in denying plaintiff's motion to dismiss defendant's motion for failure to comply with the rules of court.

We can appreciate the substantial responsibility placed on district court judges in providing for custody of children. G.S. § 50-13.2(c) clearly authorizes the court to enter an order providing for the child to be taken outside of the state; however, if the order contemplates the return of the child to this state, the judge *may* require the person having custody out of this state to give bond or other security conditioned upon the return of the child to this state in accordance with the order of the court. Judge Gash exercised his option under this statute.

Since the trial judge has the opportunity to see and hear the parties and the witnesses, he is vested with broad discretion in cases involving custody of children. *E.g., Blackley v. Blackley*, 285 N.C. 358, 204 S.E.2d 678 (1974); *see also Paschall v. Paschall*, 21 N.C.

App. 120, 203 S.E.2d 337 (1974); *In Re Custody of Stancil,* 10 N.C. App. 545, 179 S.E.2d 844 (1971). We perceive no abuse of discretion in this case. Unless the contrary appears, it is presumed that judicial acts and duties have been duly and regularly performed. *Lovett v. Stone,* 239 N.C. 206, 79 S.E.2d 479 (1954); *Henderson County v. Johnson,* 230 N.C. 723, 55 S.E.2d 502 (1949).

For the reasons stated, the decision of the Court of Appeals affirming the order appealed from is

Affirmed.

Justice CARLTON dissenting.

I respectfully dissent from the majority opinion because I think it reaches an incorrect result and, in so doing, creates a dangerous precedent in the child custody law of North Carolina. While representation by proxy may be the norm in other civil cases, it should be the exception in child custody actions. I want to dissociate myself completely from new law which will allow lawyers to obtain powers of attorney from errant parents involved in child custody litigation and shuffle off to court for a hearing in which the trial judge will have no opportunity to question and view the demeanor of *both* parents when deciding the child's fate.

The majority determines that, under the facts of this case, representation by proxy is acceptable. The majority first applies the most elementary rules of civil procedure to child custody litigation and concludes that "[t]hose who are familiar with the operation of our courts in North Carolina know that quite frequently a party to our civil action or proceeding does not appear at the trial . . . ." Parties may "quite frequently" fail to appear in ordinary civil litigation, but I think it unheard of in child custody suits. The majority does, however, recognize that the child custody suit is an exception to the "general rule" that no personal appearance is required:

> In those instances where the court is dealing with matters which affect children of tender years or children with special problems, or when compelling circumstances do not otherwise dictate, the presiding judge should require the presence of both parents so that the court is in the position to gauge what disposition is in the best interest of the child.

I agree with this statement but do not believe it goes far enough. In

Hamlin v. Hamlin

my opinion, the presence of both parents is almost always necessary for the court to be in "the position to gauge what disposition is in the best interest of the child," and, like the majority, I would require a showing of compelling circumstances before allowing a parent to make an appearance by proxy. My disagreement with the majority is what constitutes "compelling circumstances." In finding that the circumstances of this case justify the physical absence of the father, the majority has, I fear, created a dangerous precedent.

The facts of this case demonstrate my point. While the record discloses that John is neither a child of tender years nor one with special problems, it also discloses facts which, I contend, show that the presence of the father was necessary to determine what disposition was in the *child's* best interests. The father has not personally appeared before the district court since at least 1974, some five years before the 1979 custody hearing. Since his last appearance, the father has remarried, fathered a child, and moved to Alaska, far from the North Carolina towns of Rutherfordton and Roxboro. John has seen very little of his father during that period. In the summer of 1975, the defendant took John to Alaska without the plaintiff-mother's knowledge or permission and, while the child was in Alaska, attempted to withdraw him from his Person County school and enroll him in Alaska's correspondence study program. Additionally, in June of 1978 John wrote a letter to Judge Gash, the presiding judge over both the 1978 and 1979 custody hearings, informing the judge of John's desire not to go to Alaska. John stated that "I want to see my father but *not* in Alaska" (emphasis in original). Given these factors and the great distance which the child will have to travel to see his father, the father's physical presence at the hearing was crucial to a determination of the child's best interests. Without his presence, the district court could not make a reliable assessment of the child's best interests.

This case does not present "compelling circumstances" which would excuse the father's absence. Inconvenience, no matter how great, should rarely rise to the level of "compelling circumstances." If the father were ill or otherwise unable to travel, I would be more inclined to excuse his absence. Moreover, if the matter to be considered at the hearing was a minor change in visitation rights, his absence would be more readily excused. However, the "visitation period" of over six weeks in the case *sub judice* amounted to an award of temporary custody and was nothing less than a major

change for the child and the parents. Under such circumstances, the presence of both parents should be required, and my review of the record discloses no compelling reason to excuse him from appearing.

I also disagree with the majority's holding that plaintiff need not be concerned that defendant may not be bound by action of the court because his attorney has a power of attorney in hand. I think plaintiff has every right to be concerned about this paternal representation by proxy. There is nothing to prevent defendant from revoking the power of attorney at any time. Moreover, those familiar with child custody litigation know that such a document would provide little comfort or assistance to plaintiff should defendant elect to disobey the court order and keep the child with him in Alaska. Should that happen, even with the posted bond and new uniform laws on child custody adopted by an increasing number of states, the burden on plaintiff in seeking the child's return would be enormous. While this burden on plaintiff would be no less had defendant personally appeared and prevailed on his claim, the risk of such a consequence is an additional reason why the trial court should have required defendant's presence so that he could be questioned and his demeanor observed.

I think our statutes pertaining to custody require the presence of both parents at all hearings on custody or visitation. G.S. 50-13.2 (a) (Cum. Supp. 1979) first provides that child custody orders shall be based on that which will "best promote the interest and welfare of the child." This is the "polar star by which the discretion of the courts is to be guided." *In re Lewis*, 88 N.C. 31, 34 (1883); *accord, Hinkle v. Hinkle*, 266 N.C. 189, 146 S.E. 2d 73 (1966); 3 R. Lee, *N.C. Family Law* § 224, at 21 (3d ed. 1963). I submit that it is virtually impossible for a trial judge to make this determination as between competing parents without the presence of both parents. Determination of child custody and visitation rights is one of the most difficult tasks faced by a trial judge under the best of circumstances. What is in a child's best "interest and welfare" involves many factors. A few, such as adequacy of room and board, are capable of mechanical determination. Most, such as determination of a parent's attitude and demeanor, are intangible and capable of determination by the trial judge only with the closest possible observation of the parties and the child. Clearly, such determinations cannot be made by the trial court when one of the parents is not in

Hamlin v. Hamlin

court. I think it a clear abuse of discretion for a trial court to take an action such as that disclosed by this record without the parent in court. The majority finds some consolation in the failure of the mother to subpoena the father in this case. The grave decision of child custody should not, in my opinion, be so seriously affected by procedural niceties.

Additionally, the record indicates that plaintiff may not have had an opportunity to subpoena defendant. Defendant's notice of motion of 29 June 1979 stated that defendant would appear at the hearing. Although the record does not disclose when plaintiff learned that defendant would not appear, the power of attorney was not filed with the court until 4 p.m. on 11 July 1979, the day of the hearing.

Finally, I would find that the trial court has flagrantly violated another portion of G.S. 50-13.2(a). That portion of the statute provides, "An order awarding custody must contain findings of fact which support the determination by the judge of the best interest of the child." There is not the *first* finding of fact in the order of 11 July 1979 to support the conclusion that "the best interests of the child would be served by making provision for visitation during the remainder of his minority to and with his father." While the statute refers to a custody order and we are here concerned with a visitation order, the right to visitation for a six-week period is tantamount to temporary custody and the statute is clearly applicable.

I, of course, do not know what is in the "best interest and welfare" of this child. The trial court is in a far superior position to make such a determination because it can personally observe the witnesses and the parties. Here, I simply feel that the trial court abused its discretion in proceeding without the father and erred in failing to make the required findings of fact.

The necessity for the findings of fact and the presence of both parents for observation in determining what is in "the best interest and welfare" of the child is dramatized by reviewing some facts disclosed by the record:

— In the original custody order of 31 August 1973 the trial court found that while there was testimony about the "qualifications" of the paternal grandmother, there was "very little concerning the father's fitness and

qualifications."

— That, in spite of the liberal visitation privileges granted defendant in the 31 August 1973 order, from that date until 26 June 1974, visits took place only for seven days in December of 1973 and one day in March of 1974.

— That defendant, in June 1975, removed the child from the state during his summer visit and took him to Alaska without notice to the mother and was subsequently indicted for violation of G.S. 14-322.1 by a grand jury in Person County.

— That during the time the child was in Alaska, defendant attempted to withdraw his son from the North Carolina school system and enroll him in a correspondence school in Alaska.

In light of these earlier findings *and* the complete *lack* of any findings in the 11 July 1979 order to support the conclusion reached, I find serious error.

For the reasons stated, I vote to reverse the Court of Appeals.

Justice HUSKINS joins in this dissent.