VERA TABAKOVA, Plaintiff,
v.
DANIEL TEODORESCU Defendant.
No. COA09-424.
Court of Appeals of North Carolina.
Filed: February 16, 2010.
This case not for publication
Jeffrey L. Miller, for Plaintiff-Appellee.
W. Gregory Duke, for Defendant-Appellant.
WYNN, Judge.
In parental custody actions, custody of a minor child should be awarded to the parent that will best promote that child's welfare and interests.[1] Here, Defendant-father contends that the trial court erroneously awarded Plaintiff-mother with primary physical custody of the parties' minor child. Because the trial court appropriately considered all relevant factors in awarding Plaintiff-mother with primary physical custody of the minor child, we affirm.
Plaintiff-mother is Vera Tabakova, a citizen of Bulgaria. In 1995, she married Defendant-father, Daniel Teodorescu, from Romania. Following their marriage, Vera moved to Italy to continue her education, and Daniel moved to Baton Rouge, Louisiana to pursue a Ph.D. In 1997, Vera joined Daniel in Louisiana to obtain her own Ph.D. In 2000, the parties' child, A.T., was born in Louisiana.
In 2002, Daniel accepted a job in Vienna, Virginia while Vera remained in Louisiana with A.T. to complete her Ph.D studies until she joined Daniel in 2004. In December 2004, Vera accepted a position at a community college in Richmond, Virginia. The parties moved to Richmond so that Vera would not have to commute back and forth from Vienna. Shortly after moving to Richmond, Vera accepted a one-year position as a visiting assistant professor at East Carolina University in Greenville, North Carolina. The parties agreed that A.T. should reside in Greenville with Vera, while Daniel remained in Richmond.
From August 2005 to June 2006, A.T. attended kindergarten in Greenville. On weekends, Daniel drove from Richmond to visit his family. The record indicates that during this time, Daniel believed that Vera would return to Richmond upon the expiration of her one-year contract with East Carolina University. However, Vera informed Daniel that she planned to remain in Greenville with A.T. Vera's decision led to arguments between the parties.
In Spring 2006, Daniel requested Vera's permission to take A.T. to Romania to spend the summer with Daniel's parents. Wanting assurances that A.T. would be returned from Romania, Vera refused to release A.T.'s passport until Daniel agreed to sign an enrollment contract and pay the tuition for A.T. to attend private school in Greenville. Daniel complied and took A.T. to Romania for the summer of 2006.
Upon returning from Romania, A.T. began attending the first grade in Greenville. Between November 2006 and January 2007, Daniel's parents visited him in Richmond and accompanied him on his weekend visits to Greenville. During these weekend visits, pre-existing conflicts among Vera, Daniel and Daniel's parents intensified.
On 1 February 2007, Vera filed a complaint in Pitt County, North Carolina seeking custody, child support and divorce from bed and board. Following a hearing, in August 2008, the trial judge granted joint legal custody of A.T. to both parties and awarded primary legal custody to Vera. The trial court also placed several limitations on Daniel's ability to travel with A.T. outside of the continental United States.
From that order, Daniel appeals arguing that the trial court erred by: I) failing to award custody to the parent that will best promote A.T.'s interests; II) vesting sole discretion regarding A.T.'s passport with Vera; III) placing restrictions on Daniel's travel privileges with A.T. outside the continental United States; IV) requiring Daniel to post a $100,000 secured bond as a condition on his traveling with A.T. outside of the continental United States; and V) failing to make sufficient findings of fact and conclusions of law to support its judgment.

I.
Daniel first argues that the trial court failed to award primary physical custody to the parent that will best promote A.T.'s interests. Specifically, Daniel contends that Vera should not have been awarded primary physical custody of A.T. because Vera selected and enrolled A.T. in a private school without first consulting Daniel; withheld A.T.'s passport until Daniel agreed to allow A.T. to attend private school in Greenville; signed A.T. up for extracurricular activities without first consulting Daniel; and accessed Daniel's personal email account and personal papers to gather information to be used against Daniel in the divorce action. We disagree.
"An order for custody of a minor child . . . shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child. In making the determination, the court shall consider all relevant factors . . . ." N.C. Gen. Stat. § 50-13.2(a) (2007). On appeal, child custody decrees are reviewed for an abuse of discretion. King v. Allen, 25 N.C. App. 90, 92, 212 S.E.2d 396, 397 (1975). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are manifestly unsupported by reason." Davis v. Davis, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (citations and quotations omitted). Moreover, trial courts are not required to make findings of fact requested by either party, so long as the court made findings necessary to resolve the material questions raised in the case. Witherow v. Witherow, 99 N.C. App. 61, 66, 392 S.E.2d 627, 631 (1990), aff'd per curiam, 328 N.C. 324, 401 S.E.2d 362 (1991).
Here, the record shows that the trial court made the necessary factual findings to determine which of the parties would best promote A.T.'s well being. Included in the trial court's findings of fact were the following:
29. . . .That the Plaintiff is patient and even-tempered with the minor child, and she allows his individual interests, inquisitiveness, and opportunity to discover life outside the strict boundaries of his home and family. That she also instills and encourages a sense of family and love for his relatives, including Defendant's family. . . .
. . . .
31. That the Defendant and his parents appear to be too possessive of the said minor child and unintentionally tend to restrict the minor child's experiences which are independent of the immediate family structure. That while family experiences should be cherished and protected, . . . it is in the best interests of the minor child to be in the primary custody of a parent who is willing and able to allow the minor child to experience a wealth of available activities and experiences which will lead to a well-rounded and resilient young man, capable of success in a [sic] ever-increasing changing and diverse society.
Factual findings 29 and 31 indicate that the trial court properly considered A.T.'s best interests before awarding Vera with primary physical custody. Accordingly, we hold that the trial court did not abuse its discretion by awarding primary physical custody of A.T. to Vera.

II.
Daniel next contends that the trial court erred by vesting sole discretion regarding A.T.'s passport with Vera. We disagree.
Trial courts have discretion to award parents with joint legal custody but vest the primary decision-making ability with regards to the child in one parent. Diehl v. Diehl, 177 N.C. App. 642, 647, 630 S.E.2d 25, 28 (2006). However, the court is required to make the appropriate findings of fact to determine that such a decision is warranted. Id.
Here, the trial court made the appropriate findings of fact supporting its decision to vest control of A.T.'s passport with Vera. The trial court determined that Daniel had taken A.T. on an extended trip to Romania at least once before and that Vera had a strained relationship with Daniel and Daniel's parents. The trial court further found that on one occasion, in January 2007, Daniel's mother told Vera that A.T. would be returning to Richmond with Daniel's family; and in 2006, Daniel's mother advised him with regard to obtaining custody of A.T. in Romania. The trial court's factual findings addressing Daniel's familial ties with Romania, his interest in Romanian custody actions and the existing tension among the parties and Daniel's parents, were sufficient to support the trial court's decision to award Vera with control of A.T.'s passport.

III.
Daniel next contends that the trial court erred by placing restrictions on Daniel's travel privileges with A.T. outside the continental United States. Again, we disagree.
In Brewington v. Serrato, 77 N.C. App. 726, 336 S.E.2d 444 (1985), the defendant appealed a trial court order that only allowed her to visit her children "in North Carolina at the plaintiff's home with others present `at such times as the parties may agree.'" Id. at 732, 336 S.E.2d at 449. Upholding the trial court's order, we stated that "to justify severe restrictions on visitation such as those granted by the court in this case, specific findings of fact must be made." Id. at 733, 336 S.E.2d at 449 (citation omitted). There, "[t]he trial court found that defendant had previously taken the minor child to Texas under a false pretense and had subsequently refused to return him to North Carolina." Id.
Here, the trial court restricted travel by stating, "Defendant shall be allowed to travel with [A.T.] outside the continental United States for a period not exceeding three weeks per calendar year, but such travel with the child shall be limited to those countries that are signatories to the Hague Convention Treaty governing child custody . . . ." Additionally, the order provided that Daniel must provide Vera with a specific travel itinerary 10 days before trips outside of the continental United States; and during international trips, Vera is permitted to have telephone contact with A.T. at least twice a week.
The record shows findings to support the trial court's decision to place limitations on Daniel's travel privileges with A.T. outside the United States. Daniel "was born in Romania and completed much of his formal education in that country"; and Daniel "separately traveled to Romania with [A.T.] in June 2006, leaving [Vera] in the United States." Additionally, in factual finding 26 the trial court found:
26. [That] the Plaintiff discovered the e-mails and letters written by Defendant's mother . .. in which the Defendant's mother was giving the Defendant advice about Romanian legal procedures and other conduct that would deprive the Plaintiff of the custody of the minor child . . . .
Moreover, the record indicates that Daniel had obtained a Romanian birth certificate for the minor child.
In light of these findings, we hold that the trial court did not abuse its discretion by determining that Daniel's travel privileges with A.T. outside of the continental United States should be restricted.

IV.
Daniel next argues that the trial court erred by requiring him to post a $100,000 secured bond as a condition on his traveling with A.T. outside of the continental United States. Daniel contends that because he never actively sought custody of A.T. in Romania, the bond requirement is inappropriate. We disagree.
An order for custody of a minor child may provide for such child to be taken outside of the State, but if the order contemplates the return of the child to this State, the judge may require the person, agency, organization or institution having custody out of this State to give bond or other security conditioned upon the return of the child to this State in accordance with the order of the court.
N.C. Gen. Stat. § 50-13.2(c) (2007). Moreover, the decision to include a bond requirement falls within the discretion of the trial court. See Hamlin v. Hamlin, 302 N.C. 478, 485, 276 S.E.2d 381, 387 (1981).
In this case, despite never actively seeking custody of A.T. in Romania, the trial court found that Daniel is originally from Romania; Daniel's parents remain in Romania; and Daniel has discussed obtaining custody of A.T. in Romania. Based on these factual findings, the trial court's decision to impose a bond requirement on Daniel's international travel with A.T. is not manifestly unsupported by reason. Accordingly, we hold that the trial court's decision to include a bond requirement was not an abuse of discretion.

V.
Daniel lastly contends that several of the trial court's factual findings are not supported by competent evidence. We disagree.
"[O]ur appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." In re Montgomery, 311 N.C. 101, 110-11, 316 S.E.2d 246, 252-53 (1984) (citations omitted).
Generally, Daniel challenges the trial court's factual findings suggesting that Vera is more likely to provide Daniel with a balanced and extroverted lifestyle. However, the trial court was presented with testimony suggesting that Daniel was opposed to A.T.'s participation in activities outside of the home and that Daniel did not encourage A.T. to form relationships with children his own age.
As this evidence was sufficient to support the trial court's findings, we hold that the trial court's findings are supported by competent evidence. Accordingly, we uphold the trial court's findings of fact on this issue.
Affirmed.
Judges McGEE and BRYANT concur.
Report per Rule 30(e).
NOTES
[1] N.C. Gen. Stat. § 50-13.2(a) (2007).