IN THE SUPREME COURT OF NORTH CAROLINA

No. 78A24

Filed 22 August 2025

JENNIFER C. DURBIN

v.

MATTHEW L. DURBIN

Appeal pursuant to N.C.G.S. § 7A-30(2) (2023) from the decision of a divided panel of the Court of Appeals, 292 N.C. App. 381 (2024), reversing an order entered on 8 July 2022 by Judge Julie Bell in District Court, Wake County. Heard in the Supreme Court on 29 October 2024.

*Jackson Family Law, by Jill Schnabel Jackson, for plaintiff-appellant.*

*Fox Rothschild LLP, by Kip D. Nelson, for defendant-appellee.*

RIGGS, Justice.

In child custody matters, after the trial court enters a custody order, that order is only subject to modification in the face of a substantial change in circumstances affecting the welfare of the child. N.C.G.S. § 50-13.7 (2023). In this case, we are asked to explore the contours of what constitutes a substantial change in circumstances. Specifically, the question presented to us is whether escalating conflict on the part of one or both parents that—in the view of the trial court—risks injury to the child constitutes a substantial change in circumstances justifying modification of an existing child custody order. We conclude that it does. Although

conflict is common in child custody cases, when the conflict escalates and poses a risk to the safety of the children, such a situation represents a change in circumstances opening the door to a custody order modification by the trial court. Thus, we reverse the opinion of the Court of Appeals and affirm the trial court's modification order.

## I.  Factual & Procedural Background

Jennifer (the Mother) and Matthew (the Father) Durbin married in 2007. They had two children: a son born in 2008, and a second son born in 2010. The parties separated in 2016 and entered into a consent order dictating child custody and child support on 9 February 2017. In the consent order, the parties agreed to share joint legal and physical custody of the children. One of the children has a medical condition requiring daily medications. For that reason, the consent order specifically required both parents to "provide each other with any medication which the child is taking at the time of the transfer of physical custody" and provide the other parent with "sufficient information to allow the other party to obtain refills of that medication." The consent order also required providing information about medical emergencies, sharing information about the children's activities and appointments, avoiding scheduling activities for the children during the other party's custodial time, and other terms.

In October 2020, the Mother filed a motion to modify the child custody order. In the motion, she alleged there has been a substantial change in circumstances based upon changes in the parties' jobs, changes in the children's schedules, and,

importantly for this case, allegations that the Father had been held in contempt of court for violating the custody order. In short, she argued that the current custody order was not in the best interest of the children.

Based upon an agreement by the parties, the trial court entered an order modifying the custody agreement (2020 Order). The 2020 Order generally maintained the terms from the 2017 consent order and maintained joint legal custody, but the modified order required appointment of a parenting coordinator[1] to deescalate the conflict between the parents. *See* N.C.G.S. § 50-91 (2023) (allowing the appointment of a parenting coordinator). The order gave the parenting coordinator broad authority to resolve disputes between the parties and make decisions regarding the children, including determining transition pickup and delivery, participation in child care, bedtime, diet, clothing, recreation, and, most relevant to this case, health care management. *See* N.C.G.S. § 50-92 (2023) (outlining the allowable scope of authority for parenting coordinators).

The Father did not agree with many of the decisions made by the parenting coordinator and believed that eight decisions made between 14 January 2021 and 13 April 2021 "created unnecessary confusion and conflict between the parties." The relationship between the Father and the parenting coordinator deteriorated so much that, in April of 2021, the Father filed a motion to terminate the parenting

---

[1] The order notes that the parties previously had a parenting coordinator before the order was entered but there is no explanation why that parenting coordinator ended her involvement with the case.

coordinator appointment citing "lack of reasonable progress" as the reason, with no further explanation. Additionally, the Father filed a motion for the trial court to review the parenting coordinator's decisions regarding the custody schedule during the summer of 2021. The trial court concluded that the parenting coordinator's decisions were reasonable. Further, the trial court found that "[t]he parties are high conflict" and would "benefit from the continued services of a parenting coordinator." Thus, the trial court denied the motion to terminate the parenting coordinator.

The conflict between the Father and the parenting coordinator regarding the children's medical care continued and the Father refused to comply with directives issued by the parenting coordinator. On 8 October 2021, the Mother filed a motion to modify the 2020 Order, alleging the Father was interfering with the children's therapy appointments and not attending to the children's medical needs. Specifically, she alleged the Father refused to take one child to therapy appointments during his custodial time, in direct violation of the parenting coordinator's direction. Additionally, the Father minimized the children's medical needs and refused to cooperate in the treatment and administration of medically prescribed medication to address severe asthma and life-threatening allergies. The Father's failure to administer medication for the child's asthma resulted in his child requiring medical intervention to address breathing issues. In September, the parenting coordinator filed a report detailing numerous problems with the Father's compliance with the custody order.

In response to the parenting coordinator's report[2] and parenting coordinator's request for expedited hearing, the trial court held a hearing on 27 October 2021. The trial court's post-hearing order documented a pattern of escalating conflict between the Father and the parenting coordinator. The order indicated that the Father was unwilling to answer reasonable questions about the children's health and responded to requests in an unproductive and hostile manner. The order further described how the Father was making it difficult for his children to attend therapy and refused to administer the child's asthma medication as prescribed or maintain a medication log as directed by the parenting coordinator.

The trial court concluded that the Father's refusal to comply with the parenting coordinator's "directive had an adverse effect on [the child's] health." Importantly, the trial court concluded that the ongoing conflict affected "the health, education and welfare of the minor children." The trial court concluded that the "findings constitute[d] a substantial change in circumstances warranting the entry of a temporary custody order" modifying the 2020 Order. For these reasons, the trial court entered a temporary custody order on 11 January 2022, giving the Mother, *inter alia*, primary physical custody and "final decision-making authority" on "major decisions" when the parties "are unable to reach mutual agreement." The order specifically required the parents to "comply with the [parenting coordinator's]

---

[2] Our review was limited by the fact that the parenting coordinator's reports were not included in the Record.

directive on medication for the children." The order also directed the parents not to discuss the court proceedings with the children.

According to the second temporary custody order, after the October 2021 hearing, the Father notified the minor children of the changes in the custodial schedule before the order was submitted, "causing distress to the children," and also escalated his conflict with the parenting coordinator when he filed a bar grievance against her, noticed her for a deposition, and threatened to file a motion for sanctions against her. At the request of the parenting coordinator, the trial court held another hearing on 10 January 2022. The trial court found as fact that the Father's actions against the parenting coordinator were retaliatory. Although the trial court noted that the parenting coordinator had "done an excellent job in her role," the trial court appointed a new parenting coordinator to reduce conflict and protect the current parenting coordinator from "further retaliatory actions."

The trial court held a subsequent hearing on 3 May 2022 for the motion to modify custody and entered an order making the prior modification to the custody order permanent on 8 July 2022 (Modified Custody Order). In the Modified Custody Order, the trial court made findings that the conflict regarding medical care of the child continues. The trial court also found that the Father continued to refuse to ensure the child was taking the medication consistently in spite of the child's diagnosed medical condition and a directive from the parenting coordinator to log administration of medication. The trial court also noted ongoing conflicts and that

the "amount of conflict between the parties is not in the children's best interest." The trial court concluded that the findings "constitute[d] a substantial change in circumstances" warranting modification to the terms of the 2020 Order.

The Father timely appealed this Modified Custody Order to the Court of Appeals. On appeal, he presented three arguments: the trial court erred by (1) concluding there was a substantial change of circumstances affecting the welfare of the children, (2) concluding modification was in the best interests of the children, and (3) awarding primary decision-making authority to the Mother.

A divided panel of the Court of Appeals reversed the Modified Custody Order, holding that the findings of fact did not support the conclusion that there was a substantial change in circumstances affecting the welfare of the children. *Durbin v. Durbin*, 292 N.C. App. 381, 382 (2024). The majority noted that the "absence of meaningful findings as to the circumstances as they existed at the time of the 30 October 2020 consent order" hindered the review because the Court of Appeals could not determine the circumstances at the time of the order. *Id.* at 394. However, the majority acknowledged that the record, including multiple temporary orders, presented information sufficient to determine whether a substantial change had occurred. *Id.* at 394–95.

In the majority's view, the "mere existence of an ongoing conflict" did not support the conclusion that the "conflict adversely affects the child." *Id.* at 399. The majority concluded that the findings demonstrated that the children were insulated

from the high level of conflict in their parent's relationship. *Id.* at 398. Additionally, the majority did not view the conflict between the parent and the parenting coordinator as constituting a substantial change in circumstances. *Id.* at 399. Having concluded that the findings of fact did not support a substantial change in circumstances, the Court of Appeals determined that the remaining issues were moot. *Id.* at 400.

The dissenting judge disagreed and would have held that the findings showed an escalating level of conflict between the parties, primarily caused by the Father, "interfered with important actions being taken and important decisions being made, which negatively affected the health and welfare of the minor children." *Id.* at 411 (Collins, J., dissenting). Further, she noted there was no support for the majority's assertion that "the trial court's findings of fact actually suggest the children were relatively insulated from this conflict." *Id.* at 413. The Mother appealed on the basis of the dissent.

## II.  Analysis

The issue here is whether an escalating pattern of conflict between the parents and an unwillingness on the part of a parent to communicate with the other parent and parenting coordinator to advance the welfare of the children constitutes a substantial change in circumstances justifying a modification in custody. In this case, we hold that the Father's actions, and the trial court's factual findings that document that behavior, do establish that changed circumstance. For that reason, we reverse

the decision of the Court of Appeals and affirm the trial court's Modified Custody Order.

## A. Standard of Review

The "trial courts are vested with broad discretion in child custody matters." *Shipman v. Shipman*, 357 N.C. 471, 474 (2003). This discretion is given to the trial court because of the opportunity to see the parties, hear the witnesses, and detect nuances innate in live testimony that are absent from the printed record. *Id.* at 474. If "we conclude that there is substantial evidence in the record to support the trial court's findings of fact, such findings are conclusive on appeal, even if record evidence might sustain findings to the contrary." *Id.* at 475 (cleaned up) (quoting *Pulliam v. Smith*, 348 N.C. 616, 625 (1998)).

In addition to considering whether the "trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law." *Id.* Where we determine that the trial court has properly concluded "a substantial change of circumstances has affected the welfare of the minor child" and modified the custody order based upon the child's best interest, "we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement." *Id.*

## B. Change in Circumstances Affecting the Welfare of the Child

It is well established that "a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification

shows that a substantial change of circumstances affecting the welfare of the child warrants a change in custody." *Shipman*, 357 N.C. at 473 (cleaned up) (quoting *Pulliam*, 348 N.C. at 619); *see also* N.C.G.S. § 50-13.7(a) (establishing that a child custody order "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party"). A substantial change in circumstance can be supported by either allegations that the current custody situation has an adverse effect on the child or by "showing a change in circumstance . . . is, or is likely to be, beneficial to the child." *Pulliam*, 348 N.C. at 620 (recognizing that an adverse effect upon a child constitutes a change in circumstance, as does a change in circumstance that is beneficial to the child). Importantly, a trial court's guidepost is to "measure whether a change in custody will serve to promote the child's best interests." *Shipman*, 357 N.C. at 474 (citing *In re Custody of Peal*, 305 N.C. 640, 645–46 (1982)).

The trial court's "examination of whether to modify an existing child custody order is twofold."[3] *Id.* First, the trial court must determine there was a substantial

---

[3] As the dissent notes, the opinion in *Shipman* describes two parts to the first prong of the analysis. The entire test as described in *Shipman* is:

> The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the

change in circumstances affecting the welfare of the child. *Id.* Trial courts must make findings demonstrating a nexus "between the substantial change in circumstances and the welfare of the child." *Id.* at 478. If "the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests." *Id.*

When determining whether there has been a substantial change in circumstances affecting the welfare of the child "courts may only consider events which occurred after the entry of the previous order, unless the events were previously undisclosed to the court." *Woodring v. Woodring*, 227 N.C. App. 638, 645 (2013); *accord Shipman*, 357 N.C. at 480 (recognizing that the substantial change in circumstance must be based upon changes occurring after the entry of the original custody decree that affects the welfare of the child). Unfortunately, "child custody disputes are often hotly-contested, bitter affairs in which the innocent children . . . suffer as confused and unwilling pawns." *Peal*, 305 N.C. at 645. The statute requiring a substantial change in circumstance affecting a child's welfare, N.C.G.S. § 50-13.7, functions to limit vexatious litigation by "limiting the circumstances under

---

child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.

357 N.C. at 474.

which the custody of a child, once established, is subject to being changed." *Hibshman v. Hibshman*, 212 N.C. App. 113, 123 (2011).

The nature of child custody relationships is such that a substantial change in circumstances is often based upon a series of discrete events or an ongoing pattern of behavior that affects the welfare of the child. *See, e.g., Shipman*, 357 N.C. at 475–76 (summarizing the evidence supporting a substantial change in circumstance where a parent demonstrated instability from frequent moves and inability to maintain a stable home, violated the consent order by preventing the other parent from seeing the child, and allowed the child to stay in an unsafe home); *Peal*, 305 N.C. at 646–47 (holding that the increased age of the child and the need for the two children to live in the same household constituted a substantial change in circumstances). The Court of Appeals noted an "absence of meaningful findings as to the circumstances that existed at the time of the 30 October 2020 consent order" and claimed that such an absence made appellate review difficult. *Durbin*, 292 N.C. App. at 394. However, this observation ignores the fact that the 2020 Order was a consent order, which created a baseline of how the parties agreed to act, from which the trial court could measure a change in circumstances. More significantly, the trial court's temporary custody order and Modified Custody Order tell a clear story about the Father's failure to comply with the consent order terms to which he agreed.

The Modified Custody Order and the temporary custody orders—when compared to the 2020 Order—provide ample evidence upon which we can conclude

that a substantial change in circumstances occurred affecting the welfare of these children. The findings in these orders demonstrate an increasing level of conflict created by the Father about many aspects of the children's lives but especially the children's medical needs and therapy appointments.

The trial court, in the 12 January 2022 temporary custody order, focused on the ongoing dispute about the children's medical conditions. The trial court made a finding that despite his son's diagnosed medical problem and the directive of the parenting coordinator to maintain a medication log, the Father refused to assume any responsibility for ensuring his twelve-year old son received his necessary asthma treatments. The trial court concluded that the Father's failure to comply with this directive from the parenting coordinator "had an adverse effect on [his son's] health and was not in the child's best interest." Additionally, the trial court discussed the Father's resistance to taking the children to therapy "during his custodial time" resulting in "numerous cancelled therapy appointments in 2021 and "half of all remaining therapy appointments . . . cancelled for the rest of the year." The Father's behavior continued even after he was held in contempt for interfering with the children's therapy.

Notably, the trial court made numerous findings documenting the Father's high-conflict relationship with the parenting coordinator who was appointed to help de-escalate conflict within the familial relationship. N.C.G.S. § 50-91 (providing trial courts with the authority to appoint parenting coordinators in high-conflict cases

when the appointment is in the best interest of the child). The temporary custody orders are replete with examples of the trial court having to order the Father to behave appropriately toward the parenting coordinator including ordering him "not to attempt to threaten and intimidate the [parenting coordinator]." To be sure, conflict with the parenting coordinator, by itself, is not a substantial change in circumstances unless it affects the welfare of the child.

But the trial court's findings of fact demonstrate the Father's deteriorating ability to communicate in a manner that supports the needs and best interests of the children. For example, the Father's "tactics and animosity" towards the parenting coordinator interfered with her ability to "be effective in her role going forward"; thus, the trial court had to appoint a new parenting coordinator. Further, the Father attempted to compel discovery of the parenting coordinator's conversations with the children's therapist which the trial court noted "could potentially disrupt the therapeutic relationship."

The record in this case demonstrates deliberate and thoughtful effort on the part of the trial court to de-escalate the conflict using parenting coordinators and entering temporary orders before resorting to a custody order modification. This process put the parents on notice that cooperation and de-escalation of conflict was necessary to avoid a modification in the custody order. However, when that approach did not return the relationship to a state where the welfare of the children was guaranteed, the trial court appropriately modified the custody order.

The unchallenged findings of facts in the Modified Custody Order, which are binding on appeal, *James v. Pretlow*, 242 N.C. 102, 104 (1955), demonstrate that the Father's pattern of high-conflict behavior identified in the temporary custody order continued, in large part, until the entry of the Modified Custody Order. Significantly, the trial court made a finding that due to the acute nature of the child's medical issues, it was in the child's best interest that the parents take responsibility for ensuring "he takes his medicine consistent with the doctor's recommendation and not leave it to the child." But the Father refused to follow this directive, and this had an adverse effect on the child's health. The trial court entered an order modifying the custody because the "ongoing conflict between the parties [was] interfering with important decisions being made that affect the health, education and welfare of the minor children."

The Court of Appeals majority concluded the conflict did not represent a change in circumstance because the children were insulated from the conflict. *Durbin*, 292 N.C. App. at 399. However, the Court of Appeals is wrong as a matter of fact. The trial court made findings that the conflict affected one child's daily administration of asthma medication and the children's weekly therapy appointments. Further, the trial court made a finding that the Father shared potential changes in custody with the children—without consulting the Mother and before the trial court entered an order. The trial court found that this caused distress to the children. These factual findings are unchallenged and thus binding on appeal.

The Court of Appeals' reliance upon *Smith v. Dressler*, 291 N.C. App. 197 (2023) and *Conroy v. Conroy*, 291 N.C. App. 145 (2023) led it to misunderstand when a trial court's "findings of fact support a substantial change in circumstances affecting the welfare of the children." *Durbin*, 292 N.C. App. at 395. *Smith* is not on point here, and *Conroy*'s holding contradicts the majority's arguments. First, *Smith* presented a scenario where the trial court erred in finding a substantial change in circumstance because the conduct that allegedly created the changed circumstances was considered when the original custody order was entered. *Smith*, 291 N.C. App. at 210–11; *see also Sheperd v. Sheperd*, 273 N.C. 71, 75 (1968) (recognizing that a "decree of custody is entitled to such stability as would end the vicious litigation so often accompanying such contests," unless the trial court concludes that a change of circumstances has occurred affecting the welfare of the child after the entry of the order). The reason for requiring a change in circumstances is to prevent relitigating conduct and circumstances that predate the first custody order. *Newsome v. Newsome*, 42 N.C. App. 416, 425 (1979); *see also Stanback v. Stanback*, 266 N.C. 72, 76 (1965) (acknowledging a custody order is not "a final determination of the rights of the parties touching the care and control of the child" but is subject to change only based upon a changed circumstance). In this case, the substantial change in circumstances must be based upon changes between the 2020 Order and the Modified Custody Order. And the trial court's findings are based upon conduct and circumstances that occurred after the entry of the 2020 Order. The Father's conduct

related to therapy appointments, medicine, and communication with the other parent all occurred in 2021 and 2022 after the entry of the consent order and is properly considered as a change in circumstance.

The Court of Appeals worked to distinguish *Conroy*, but that case should have directed the majority to an opposite conclusion than the one it reached. In *Conroy*, the trial court made findings of fact that the mother behaved erratically, failed to recognize her own poor decision making, and displayed a lack of judgment for the safety and welfare of the children. *Conroy*, 291 N.C. App. at 160. Similar to the situation here, the mother in *Conroy* argued that the trial court erred by finding her behavior constituted a substantial change because "she has always had poor interpersonal relationships, her overall behavior towards [f]ather has been erratic and unpredictable for years, and she has often made disparaging remarks about [f]ather while the children were present." *Id.* at 162 (cleaned up). However, a history of poor communication and high conflict may still represent a substantial change in circumstances when "those communication problems" and conflicts "are *presently* having a negative impact on [the children's] welfare." *Id.* at 164 (cleaned up) (quoting *Laprade v. Barry*, 253 N.C. App. 296, 304 (2017)). The *Conroy* court rejected nearly identical arguments to the ones made here.

In this case, the Father argues that his behavior was the same and, therefore, could not constitute a substantial change in circumstances. *See Stanback*, 266 N.C. at 76 ("A judgment awarding custody is based upon the conditions found to exist at

the time it is entered . . . [and] is subject to such change as is necessary to make it conform to changed conditions when they occur."). However, the trial court noted an increasing pattern of conflict and the Father's failure to attend to his son's medical needs, particularly his asthma care. When the failure to monitor the son's medication results in the son missing doses and thus requires him to seek additional medical care, it is plain that the conflict is presently having "an adverse effect on [the child's] health and [is] not in the child's best interest." Thus, we conclude that the binding findings of fact support the conclusion that there was a substantial change in circumstances justifying modification of custody.

## C. Best Interest of the Child

Having concluded that the trial court's findings of fact support the holding of the trial court that a change in circumstance affecting the welfare of the child occurred, we now consider whether a change in custody is in the best interest of the children. *See Shipman*, 357 N.C. at 475 (acknowledging a two-part analysis— whether a change in circumstances affected the welfare of the children and whether a change in custody is in the child's best interest). The Father argues that the trial court's findings failed to establish that the change in custody was in the best interest of the child. We disagree.

In the Modified Custody Order, the trial court made a finding of fact that "the ongoing conflict between the parties is interfering with important decisions being made that affect the health, education and welfare of the minor children." Further

the trial court concluded that it was in the child's best interest for the parent to take responsibility to ensure the child consistently receives his prescribed asthma medication. The trial court concluded that the refusal to comply with the parenting coordinator directive regarding administration of medication "had an adverse effect on [the child's] health and was not in the child's best interest." Importantly, the trial court concluded that the conflict between the parties was also not in the children's best interest and that the change in custody implemented in the temporary custody order and ratified in this Modified Custody Order was reducing the conflict.

Because the trial court had the "opportunity to see and hear the parties," consider the impact of this ongoing conflict on the children, and the trial court made findings that the Modified Custody Order was in the best interest of the children, we perceive no abuse of discretion in this Modified Custody Order. *See Hamlin v. Hamlin*, 302 N.C. 478, 485–86 (1981) (recognizing the broad discretion vested in trial judges involved in child custody cases because they have the opportunity to see and hear the parties and witnesses).

### III. Conclusion

A substantial change in circumstances affecting the welfare of the children is required before a trial court may modify an existing child custody order. N.C.G.S. § 50-13.7. We hold that a party's escalating level of conflict and unwillingness or inability to communicate in a reasonable manner about the health, education, and welfare of minor children may constitute a change in circumstances affecting the

welfare of the child. When an increasingly contentious pattern of behavior risks injury to the child, a court *may* find a substantial change in circumstances.

Here, the trial court made findings that the Father's escalating behavior and unwillingness to communicate with the Mother or parenting coordinator to advance the best interests of the children constituted a substantial change in circumstances. The Court of Appeals erred when it held that the modification was not supported by a substantial change in circumstance affecting the child's welfare. For that reason, we reverse the Court of Appeals and remand with instructions to reinstate the trial court's order modifying the child custody order.

REVERSED.

Justice BERGER dissenting.

The custody arrangement entered by the trial court may very well be in the best interest of these children. My concern is that the majority has eliminated the requirement that a party seeking to modify a custody order make two distinct showings before that inquiry is made: (1) that a substantial change of circumstances has taken place since entry of the prior order, and (2) that change affects the welfare of the child. N.C.G.S. § 50-13.7(a) (2023); *Shipman v. Shipman*, 357 N.C. 471, 474 (2003) ("If the trial court concludes . . . that a substantial change did occur but that it did not affect the minor child's welfare, the court's examination ends, and no modification can be ordered."). Because the majority fails to properly apply this test to the facts here, I respectfully dissent.

The procedural history in custody and support cases is critical, and without an understanding of what the parties seek to modify, the *Shipman* test is meaningless. The parties entered a Consent Order for Child Custody and Child Support on 30 October 2020. Plaintiff filed a Motion to Modify this order on 8 October 2021. Thereafter, temporary custody orders were entered on 12 January 2022 and 9 February 2022. The trial court specifically stated that both of these orders were "temporary and non-prejudicial." A full hearing on plaintiff's motion to modify was held in May 2022.

So, what changed between October 2020 and the full custody hearing in May

2022?

The majority frames the issue here as "whether an escalating pattern of conflict between the parents and an unwillingness on the part of a parent to communicate with the other parent and parenting coordinator to advance the welfare of the children constitutes a substantial change in circumstances justifying a modification in custody." But custody shouldn't be changed simply because a party wasn't polite to the parenting coordinator.

"The law requires the moving party to prove a difference between the current circumstances and the circumstances that existed at the time of the previous order," 3 Suzanne Reynolds, *Reynolds on North Carlina Family Law* § 8.44(a) (6th ed. 2021). Both the trial court and the majority here fail to engage in a meaningful comparison between the circumstances that existed in May 2022 and those that existed at the time of the 30 October 2020 order. *See Tucker v. Tucker*, 288 N.C. 81, 88-89 (1975) (that "friction between the parents had existed from the date of the first custody order," was not sufficient evidence "to support a finding that there had been a substantial change of circumstances affecting the welfare of" the child.).

To be sure, the trial court made a finding under *Shipman*'s first prong, focusing its changed circumstance analysis almost entirely on the "high-conflict" nature of this case, the "ongoing conflict" concerning decision making and information exchange, the conflict between defendant and the parenting coordinator, and issues scheduling appointments for the minor children. But the parties have had a parenting

coordinator since entry of the original custody order in 2017, as the majority recognizes, and high conflict is an ongoing condition that has persisted throughout this custody dispute.[1]  As the trial court found in the permanent custody order, "neither party seems capable of reducing the conflict."

But even if we assume *Shipman*'s first prong was satisfied, the majority has not demonstrated that the trial court's findings support a conclusion that the conflict between the parties, and especially the conflict with the parenting coordinator, affected the welfare of the children.[2]  In fact, the majority doesn't cite to any finding in the trial court's permanent order concerning impact on the children.  Instead, the majority "compare[s]" temporary orders,[3] and finds as fact an issue with medication delivery that the trial court did not include in its permanent custody order.

---

[1] High conflict is the reason parenting coordinators exist at all, *see* N.C.G.S. § 50-92 (2023), and by statute, a "high conflict case" is one in which there is
> an ongoing pattern of any of the following: a. [e]xcessive litigation[,] b. [a]nger and distrust[,] c. [v]erbal abuse[,] d. [p]hysical aggression or threats of physical aggression[,] e. [d]ifficulty communicating about and cooperating in the care of the minor children[, or] f. [c]onditions that in the discretion of the court warrant the appointment of a parenting coordinator.N.C.G.S. § 50-90(1) (2023).

[2] I note that the majority begins its opinion correctly citing our precedent under *Shipman* but alters course in its analysis by incorrectly suggesting that the second prong of *Shipman* includes consideration of the best interest of the child.  This is only done after the first two prongs are satisfied.  *See Shipman* at 474 ("If, however, the trial court determines that there has been a substantial change in circumstances and that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests.").

[3] Ordinarily, factual determinations entered without prejudice are not binding and provide an opportunity for future litigation on those same facts.  *See Marsh v. Marsh*, 259 N.C. App. 567, 570 (2018) ("An order is without prejudice if it is entered without loss of any rights; in a way that does not harm or cancel the legal rights or privileges of a party." (cleaned up)).  What

In context, the trial court's finding in the temporary order was as follows:

> 16. There has been an ongoing dispute between the parties about the children's medical conditions and the consistent administration of prescribed medications. Specifically:
>
> . . . .
>
> c. On July 29, 2021, the PC issued a directive on the medication issue. The email said, in relevant part, "I am going to ask you both to keep a medication administration chart while [the minor child] is with you that will indicate: [t]he medication administered, the amount, the date and the time."
>
> d. Despite [the minor child's] diagnosed medical problems, and the PC's directive, the conflict over the child's medication continued. Defendant did not maintain the medication log, made the child maintain the medication log, told Plaintiff and the PC that the child (who is 12) was responsible for his own medication, and argued with both Plaintiff and PC in multiple emails rather than simply make sure [the minor child] received his medication and maintaining the log so that both parents could make sure that they were consistent and coordinated in their administration of medication for [the minor child].
>
> e. Defendant's refusal to comply with the PC's directive had an adverse effect on [the minor child's] health and was not in the child's best interest.

After the full hearing on modification took place, the trial court made the following relevant findings in the permanent custody order which are nearly identical to the temporary order:

---

do findings of fact entered without prejudice mean moving forward? The majority does not say.

21. There has been an ongoing dispute between the parties about the children's medical conditions and the consistent administration of prescribed medications. Specifically:

. . . .

g. On July 29, 2021, the PC issued a directive on the medication issue. The email said, in relevant part, "I am going to ask you both to keep a medication administration chart while [the minor child] is with you that will indicate: [t]he medication administered, the amount, the date and the time."

h. Despite [the minor child's] diagnosed medical problems, and the PC's directive, the conflict over the child's medication continued. Defendant did not maintain the medication log, made the child maintain the medication log, told Plaintiff and the PC that the child (who is 12) was responsible for his own medication, and argued with both Plaintiff and PC in multiple emails rather than simply make sure [the minor child] received his medication and maintaining the log so that both parents could make sure that they were consistent and coordinated in their administration of medication for [the minor child].

Noticeably absent from the permanent order is the finding that defendant's refusal to comply with the parenting coordinator's directive affected the child's health. Perhaps the trial court purposefully declined to find an impact, or perhaps the finding was unintentionally omitted. Regardless of the reason, the finding is not in the permanent custody order, and the majority has based its reasoning on a fact that the trial court specifically stated was "non-prejudicial."

This matter should be returned to the trial court for entry of an order that satisfies N.C.G.S. § 50-13.7 and *Shipman*. If the evidence did not meet this high bar, the prior custody order should be reinstated.