IN THE MATTER OF THE CUSTODY OF JOHN CHARLES PEAL, JR. and STACY BRIAN PEAL

No. 168A81

(Filed 4 May 1982)

**Divorce and Alimony § 25.9— modification of child custody—showing of changed circumstances**

> The trial court's conclusion that there had been a substantial change in circumstances so as to justify a change of custody of a nine-year-old boy from his mother to his father was supported by the court's findings that the child was only five years old at the time custody was awarded to the mother and expressed no preference for custody; the father had custody of the child's older brother; at the time of the original custody award, the court would have

awarded custody of both children to the father if the child in question had not been so young then; the motion for change of custody was filed by the father at the request of the child itself because of the child's desire to live with his brother; and the welfare of both children did not favor a split in their custody between the mother and the father.

APPEAL by the petitioner (father) pursuant to G.S. 7A-30 (2) from the decision of the Court of Appeals (*Judge Wells,* with *Chief Judge Morris* concurring, and *Judge Clark* dissenting), reported at 54 N.C. App. 564, 284 S.E. 2d 347 (1981). The Court of Appeals reversed the order of the trial court (*Wood, Chief Judge*), entered *nunc pro tunc* on 6 October 1980 at the Civil Session of District Court, COLUMBUS County, which had removed custody of the minor child, Stacy Brian Peal, from the respondent (mother).

The pertinent facts are as follows. The petitioner, John C. Peal, and the respondent, Nell R. Peal, are the parents of two minor children, John, Jr. and Stacy. Petitioner and respondent are both school teachers residing in Columbus County.[1] After twelve years of marriage, the parties entered into a separation agreement on 20 December 1976. That agreement provided that both children were to remain in the care and custody of their mother, with their father paying reasonable support and receiving visitation privileges. The parties' custody and support arrangement was acknowledged and adopted in a consent order entered by Chief District Judge Grady on 21 December 1976. At that time, John, Jr. was nine years old, and Stacy was five years old.

A custody problem arose the very next year when John, Jr. refused to return to his mother's residence due to his strong desire to live with his father. The mother consequently filed a motion in district court seeking the return of John, Jr. to her custody. The father filed an answer in which he requested a transfer of his elder son's custody to himself based upon a change of circumstances. The matter was heard by Judge Wood. On 29 July 1977, Judge Wood granted the father's motion and awarded the primary custody of John, Jr. to him. In that order, Judge Wood found as a fact that both parents were "fit and proper persons" to care for the minor children, but he concluded as a matter

---

1. Hereinafter, we shall refer to the petitioner and the respondent as "father" and "mother," respectively.

of law that it was in the children's best interests for the father to have custody of John, Jr. and the mother to retain custody of the younger child, Stacy. Six months later, on 20 January 1978, the mother was granted an absolute divorce from the father upon the ground of one year's separation. No mention of either child's custody was made in the divorce judgment.

In July 1980, the father filed a motion in district court seeking the primary custody of his younger son, Stacy, due to a change in circumstances. The mother filed an answer denying any such change with respect to Stacy and additionally requested the return of John, Jr. to her custody. Again, the matter was heard by Judge Wood (who was now Chief District Judge of the Thirteenth Judicial District). Judge Wood subsequently concluded, as a matter of law, that there had been "a material change in circumstances" concerning Stacy and that it would "best promote the interest and welfare" of *both* children for their father to have primary custody of them. Those legal conclusions were based in large part upon the following findings of fact:

1. That an Order was heretofore entered in this matter signed by the undersigned Judge dated July 29, 1977, at which time the primary care, custody and control of John Charles Peal, Jr. was awarded to John Charles Peal and the primary care, custody and control of Stacy Brian was awarded to Nell R. Peal.

2. That at the time of the hearing on July 29, 1977, the Court was of the opinion that the custody of both of the minor children should be placed with the father, John Charles Peal, and that the custody should not be split, and, but for the tender age of Stacy Brian Peal who was then five years of age, the Court would have placed both children with the said John Charles Peal, but in view of the age of the said Stacy Brian Peal, his custody at that time was placed with the said Nell R. Peal.

3. That at the prior hearing of this action, the minor child, Stacy Brian Peal, did not testify nor express any desire to the Court concerning his preference for custody and residence.

4. That this Motion in the Cause in this matter filed by John Charles Peal was filed by the said John Charles Peal at the express request of the child Stacy Brian Peal who told his father that he wanted to live with him on a permanent basis and he wanted to live with his brother and he desired that his father file this Motion.

5. That in July of 1977 the said Stacy Brian Peal was five years of age and at the time of this hearing he is nine years of age. That the said Stacy Brian Peal does not have a preference as to with whom he desires to live but he has a strong desire to live with his brother, John Charles Peal, Jr. That the said child John Charles Peal, Jr. has a strong desire to live with his father, John Charles Peal and with his brother, Stacy Brian Peal.

6. That the Petitioner, John Charles Peal, has a close relationship with both of the minor children and expends a great deal of time and effort playing, teaching and engaging in water sports with the two minor boys at his home at Lake Waccamaw, N.C.

7. That the two minor children have a close relationship but the only significant time that the children now spend together is on weekend visitation.

8. That the said Stacy Brian Peal, at the time of the prior Order was not in school and since the date Order [sic] in 1977 has attended the first and second grades at the Cerro Gordo Elementary School and has attended the third grade and is now attending the fourth grade at the Chadbourn Elementary School. That John Charles Peal, Jr. also attends the Chadbourn School. That the said Stacy Brian Peal is usually left alone after school for approximately thirty to forty-five minutes from the time he gets out of school until his mother gets home from her teaching job at the Cerro Gordo School.

9. That the said Nell R. Peal has left the child, Stacy Brian Peal, with her mother when she is out of town and the mother has on at least one occasion disciplined the child by slapping him in the face.

10. That the said Nell R. Peal advised Stacy Brian Peal that the FBI from Fayetteville would come with fire in their eyes to get him unless he told the Court he wanted to live with her.

. . . .

13. That the said John Charles Peal, Jr., is an above-average student in school and the said Stacy Brian Peal is an average student. That it is in the best interest of both of the children that they live in the same household with each other, and both the said Nell R. Peal and the said John Charles Peal are fit and proper persons to have the care, custody and control of the said children. [Record at 103-05.][2]

Although Judge Wood's order deprived her of the custody of either child, the mother was nonetheless awarded therein substantial visitation rights, which included the right to have both children in her home for three months of every year in addition to weekend, holiday and birthday visitations throughout the year.

The mother excepted to the entry of this order and filed an appeal in the Court of Appeals. That court, in an opinion by Judge Wells, reversed the district court's order on the basis that its findings of fact did not support its essential conclusion of law that there had been a material change in circumstances affecting the welfare and best interest of the younger child which required a transfer of his custody to the father. The father now appeals from the decision of the Court of Appeals. No question is raised regarding the custody of the elder child, John, Jr.

*Williamson, Walton & Williamson, by Benton H. Walton III, for the petitioner-appellant, John C. Peal.*

*Britt and Britt, by William S. Britt and E. M. Britt, for the respondent-appellee, Nell R. Peal.*

---

2. The Court of Appeals failed to include findings 2, 6 and 13, *supra*, in its recitation of Judge Wood's findings of fact in the 1980 custody order. *See* 54 N.C. App. at 566-67, 284 S.E. 2d at 349. We have omitted only findings of fact 11 and 12 in that order because we agree with the Court of Appeals that they were not relevant to the issue of Stacy's general welfare. *See* 54 N.C. App. at 567, 568, 284 S.E. 2d at 349, 350.

COPELAND, Justice.

The sole issue for our review is whether Judge Wood abused his discretion in concluding that a change in the custody of Stacy Brian Peal was legally warranted in 1980. We hold that the able and experienced district judge did not exceed the bounds of his discretion in this regard and therefore reverse the decision of the Court of Appeals. In so doing, we affirm the sound reasoning expounded by Judge Clark in his dissent at the Court of Appeals. *See* 54 N.C. App. at 569-70, 284 S.E. 2d at 350-51.

Unfortunately, child custody disputes are often hotly-contested, bitter affairs in which the innocent children in issue suffer as confused and unwilling pawns. The totality of the matters which the trial judge must evaluate in such cases is not susceptible of a complete accounting on the printed page of a record on appeal. *See Wilson v. Wilson,* 269 N.C. 676, 678, 153 S.E. 2d 349, 351 (1967). Consequently, our Court has repeatedly held that the presiding judge, who has the unique opportunity of seeing and hearing the parties, witnesses and evidence at trial, is vested with *broad* discretion in cases concerning the custody of children. *See, e.g., Hamlin v. Hamlin,* 302 N.C. 478, 276 S.E. 2d 381 (1981); *Blackley v. Blackley,* 285 N.C. 358, 204 S.E. 2d 678 (1974). This discretion is expressly recognized in G.S. 50-13.2(a) which provides that the custody of a child shall be awarded to the person, agency, organization or institution who "will, *in the opinion of the judge,* best promote the interest and welfare of the child." (Emphases added.) Thus, under our law, the trial judge is entrusted with the delicate and difficult task of choosing an environment which will, in his judgment, best encourage full development of the child's physical, mental, emotional, moral and spiritual faculties. *Blackley v. Blackley, supra.* In making this weighty choice, the judge may properly consider the preference or wishes of a child of suitable age and discretion. *Hinkle v. Hinkle,* 266 N.C. 189, 146 S.E. 2d 73 (1966); *James v. Pretlow,* 242 N.C. 102, 86 S.E. 2d 759 (1955); *see* 3 Lee, N.C. Family Law § 224 (4th ed. 1981); 27B C.J.S. Divorce § 309(3) (1959). However, as indicated in G.S. 50-13.2, *supra,* the "paramount consideration" and "polar star," which have long governed and guided the discretion of our trial judges in such matters, are the welfare and needs of *the child,* not the persons seeking his or her custody, and even parental love must yield to the promotion of those higher in-

terests. *See Crosby v. Crosby,* 272 N.C. 235, 158 S.E. 2d 77 (1967); *Griffin v. Griffin,* 237 N.C. 404, 75 S.E. 2d 133 (1953); *Story v. Story,* 221 N.C. 114, 19 S.E. 2d 136 (1942); *In Re Lewis,* 88 N.C. 31 (1883). Applying these principles to the case at bar, it is clear that Judge Wood did not abuse his discretion in ordering what he considered to be best for Stacy Peal in 1980.

The 1977 custody decree was, of course, subject to future modification by further orders of the district court upon a showing of changed circumstances which materially affected the welfare of the children. *Thomas v. Thomas,* 259 N.C. 461, 130 S.E. 2d 871 (1963); *Blankenship v. Blankenship,* 256 N.C. 638, 124 S.E. 2d 857 (1962). As recognized by the Court of Appeals' majority, Judge Wood's findings of fact at the subsequent hearing held in 1980, *supra,* were amply supported by competent evidence and thus were conclusive on appeal. 54 N.C. App. at 567, 284 S.E. 2d at 349; *see Beall v. Beall,* 290 N.C. 669, 228 S.E. 2d 407 (1976); *Thomas v. Thomas, supra.* Contrary to the Court of Appeals' opinion, we believe that those factual findings speak for themselves and, on their face, were entirely sufficient to authorize a conclusion by the trial judge that a substantial change in circumstances bearing upon Stacy's welfare had occurred since the entry of his prior order in 1977 which, in his opinion, required a transfer of custody to the father in the promotion of the child's overall best interests. We are especially pursuaded by findings 1, 2, 3, 4, 5, 7, and 13, *supra,* that Judge Wood properly reached that legal conclusion.

Judge Wood presided over the custody actions involving the children of these parties in 1977 and 1980. He was thoroughly acquainted with the whole situation and was therefore well qualified to determine what the best interests of both children required. It is important to note that the fitness of either parent was not in serious question here—both parents were equally capable of providing their minor children with suitable care, training and affection. The heart of the matter was quite simply, as Judge Wood found, that the welfare of the *children* did not favor a split in their custody between the mother and the father. The boys had a close relationship and needed to live in the same household in order to spend significant time together. Because of this, Judge Wood made it plain in the 1980 order that he would have awarded *both* children *to the father in 1977,* instead of just

John, Jr., if Stacy had not been so young then. In light of that, Stacy's increased age at the time of the 1980 hearing, which was instituted by the father at the request of the child himself, certainly constituted a material change in circumstances. The 1980 custody hearing was also significantly different in that Stacy testified in court and informed Judge Wood directly about his strong desire to live with his brother.

In conclusion, we hold that Judge Wood's 1980 custody order was legally sound in view of the facts he found, and our review discloses no compelling basis for disturbing that order. Moreover, as Stacy has been living at his father's residence since the order's entry more than one and a half years ago, it would seem most harsh and cruel to uproot the child and separate him from his brother again.

The decision of the Court of Appeals is reversed, and the 6 October 1980 Order of the Columbus County District Court shall be reinstated. This cause is remanded to the Court of Appeals for further proceedings not inconsistent with this opinion.

Reversed and remanded.