IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-120

Filed: 7 January 2020

Bertie County, No. 12 CVD 100

MISTY JENKINS DEANES, Plaintiff

v.

KEVIN MICHAEL DEANES, Defendant

Appeal by Plaintiff from an Order entered 13 November 2018 by Judge Teresa Freeman in Bertie County District Court. Heard in the Court of Appeals 19 September 2019.

> *Pritchett & Burch, PLLC, by Lloyd C. Smith, Jr. and Lloyd C. Smith, III, for plaintiff-appellant.*
>
> *Cordell Law, LLP, by Zach Underwood, for defendant-appellee.*

HAMPSON, Judge.

**Factual and Procedural Background**

Misty Jenkins Deanes (now Gibbs) (Plaintiff) appeals from an Order modifying a previous child custody and support order and holding both parties in civil contempt. The Record tends to show the following:

Plaintiff and Kevin Michael Deanes (Defendant) married on 5 May 2007 and separated on 4 November 2011. The parties have two minor children from their

marriage—Carter, born in 2006, and Bobby, born in 2010.[1]  On 16 March 2012, Plaintiff filed a civil action seeking child custody, child support, and attorney's fees. On 4 April 2012, Defendant filed his Answer and Counterclaim.  Defendant's Counterclaim requested child custody, equitable distribution, and attorney's fees.

The trial court entered an Order of Child Custody and Child Support on 27 December 2012 (2012 Order).  The 2012 Order granted the parties joint legal custody and primary physical custody of the two minor children to Plaintiff.  The 2012 Order provided Defendant with visitation supervised by his father and granted him "reasonable telephone communication with his minor children at reasonable times and for reasonable lengths with the same being between 7:00 o'clock p.m. and 8:00 o'clock p.m. every other weekday during the week."

Shortly after entry, the parties modified visitation under the 2012 Order as Defendant's father was unable to continue supervising.  The parties presented conflicting evidence as to whether Defendant's now-wife agreed to supervise visitation in light of that change; however, the Record indicates the parties continued to operate under the framework of the 2012 Order with visitation being unsupervised until 26 November 2016.[2]  On that evening, the two minor children were in

---

[1] Pseudonyms are used to protect the identities of the minor children.

[2] The trial court found, in Findings of Fact 10 and 14, "the evidence from both parties showed that Defendant's supervised visits did not last more than six (6) months after entry of the [2012] Order." And further "that when Defendant's father stopped supervising the visits in 2013, Defendant's visits thereafter were no longer 'supervised,' and that since 2013 Defendant has exercised his visits without any sort of supervision."  These Findings were not challenged by Plaintiff on appeal.

Defendant's custody. Defendant, his new wife, and their combined four children—his wife's child from a previous marriage, his two children with Plaintiff, and the couples' biological daughter—were decorating for the holidays. Later that evening, Defendant's oldest son, Carter, remained awake after the other children went to bed. Around 10 p.m., Defendant and his wife left their residence to observe a neighbor's decorations. Defendant testified that he spoke with Carter before they left to make sure he was "agreeable to staying home alone with the other children for a short period of time." Defendant provided him with a cell phone so that he could contact Defendant if he became concerned. The duration of Defendant's absence is unclear from the Record; however, during that time Carter became worried and upset. Carter testified at trial he tried to reach Defendant but he could not unlock the cell phone he was given. He contacted Plaintiff from his own cell phone during Defendant's absence. In response to Carter's call, Plaintiff traveled through the night to Defendant's residence in Virginia. Around 4 a.m. the following morning, Plaintiff arrived at Defendant's residence and instructed her two children to leave Defendant's house without notifying Defendant. After the children were in Plaintiff's custody around 5 a.m., Plaintiff texted Defendant that she retrieved the children.

Defendant did not see his two minor children from the time Plaintiff retrieved them the morning of 27 November 2016 until the trial court's initial hearing on 11 June 2018. Defendant's phone records indicated that he called Plaintiff 225 times

during that period, but he testified that he only spoke with his children five times from 27 November 2016 until the date of trial, 11 June 2018. On 9 November 2017, Defendant filed a Motion for Contempt and Motion for Modification of Custody. Plaintiff responded on 24 January 2018 and moved for modification of custody and child support as well as for Defendant to show cause why he should not be held in civil contempt.

On 13 November 2018, the trial court entered an Order for Modification of Custody, Child Support, and Contempt (2018 Order). In the 2018 Order, the trial court found a substantial change in circumstances that affected the minor children and accordingly determined it was in the children's best interests to make several modifications to the 2012 Order. The trial court granted Defendant's Motion to Modify Custody, Plaintiff's Motion to Modify Child Support, and both parties' contempt Motions. The trial court entered a split custody arrangement: Plaintiff retained primary physical custody of Carter and was awarded primary legal custody. The 2018 Order granted Defendant primary legal and physical custody of the younger child, Bobby. The trial court also found both parties willfully violated the 2012 Order, holding both parties in civil contempt. As a result of the modification of child custody, the trial court also modified Defendant's child support obligation. Plaintiff timely appealed from the 2018 Order.

## Issues

Plaintiff presents three primary issues before this Court. (I) Plaintiff contends the trial court erred in modifying the parties' child custody arrangement in the 2012 Order by (1) finding a substantial change in circumstances that materially affected the minor children and (2) determining that a split custody arrangement was in the best interests of the children. Plaintiff next contends the trial court erred by (II) holding Plaintiff in civil contempt of the 2012 Order and (III) in calculating Defendant's child support obligation.

**Analysis**

I. Modification of Child Custody

*A. Standard of Review*

"Our trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.]" *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations and quotation marks omitted). The trial court examines whether to modify a child custody order in two parts. First, "[t]he trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child." *Id.* "When reviewing a trial court's decision to grant or deny a motion for the modification of an existing child custody order, the appellate courts must examine the trial court's findings of

fact to determine whether they are supported by substantial evidence." *Id.* Findings of fact supported by substantial evidence "are conclusive on appeal, even if record evidence might sustain findings to the contrary." *Id.* at 475, 586 S.E.2d at 254 (citation and quotation marks omitted). We then "determine if the trial court's factual findings support its conclusions of law." *Id.*

Second, the trial court must "examine whether a change in custody is in the child's best interests." *Id.* at 474, 586 S.E.2d 253. "As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." *Stephens v. Stephens*, 213 N.C App. 495, 503, 715 S.E.2d 168, 174 (2011) (citation and quotation marks omitted)). "Under an abuse of discretion standard, we must determine whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision." *Id.*

### B. The 2018 Order

In the 2018 Order, the trial court determined that there was a substantial change in circumstances that affected the minor children and that it was in the best interests of the minor children to enter a split custody arrangement. Plaintiff challenges the trial court's determination a substantial change in circumstances existed affecting the minor children and that modification of child custody was in the children's best interests. First, we review the trial court's determination that a

substantial change in circumstances affected the minor children to see if the Findings of Fact are supported by competent evidence. We then review the trial court's determination of the best interests of the minor children for abuse of discretion.

*1. Substantial Change in Circumstances that Affected the Minor Children*

Plaintiff challenges the 2018 Order's Findings that support its ruling a substantial change in circumstances affected the minor children and further contends the trial court erred because "the Court made no findings of fact as to how any alleged significant change of circumstances had affected the minor children." "Where the 'effects of the substantial changes in circumstances on the minor child . . . are self-evident,' there is no need for evidence directly linking the change to the effect on the child." *Lang v. Lang*, 197 N.C. App. 746, 750, 678 S.E.2d 395, 398 (2009) (quoting *Shipman*, 357 N.C. at 479, 586 S.E.2d at 256) (alteration in original). Moreover, "both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child[ ] . . . may support a modification of custody on the ground of a change in circumstances." *Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998).

Plaintiff challenges Finding of Fact 54, which determined a substantial change in circumstances existed because:

    a. Six years have passed since the entry of the [2012] Order.

    b. The children have grown from toddler/small children to elementary/middle-school aged children.

c.  The Defendant is no longer exhibiting a drinking problem.

d.  The Defendant enjoyed unsupervised visits with [Carter] and [Bobby] for years without incident . . . .

e.  The Defendant has cared for his children that he shares with his current wife for years without incident.

f.  Defendant has not been able to see or speak regularly by phone with [his children] since November 2016 as a direct consequence of Plaintiff's unilateral decisions, as further detailed in this Court's findings hereinabove.

Plaintiff argues the trial court erred in Findings 54(a),(b), and (f). Specifically, Plaintiff contends it was error for the trial court to find the time since entry of the 2012 Order and the age of the parties' children as facts supporting a substantial change in circumstances. Plaintiff cites to our Supreme Court's decision in *In re Peal* in support of her argument. 305 N.C. 640, 290 S.E.2d 664 (1982). However, in *Peal* our Supreme Court held the trial court correctly considered the age of the parties' son when it modified a previous custody order. *Id.* at 646-47, 290 S.E.2d at 668. We emphasize, as was the case in *Peal*, that here the trial court did not find the change in the children's age as the sole basis for its determination there was a substantial change in circumstances. In *Peal*, the trial court made additional findings and considered the child's testimony and preference. *Id.* Here, the age of the children and the time since the entry of the 2012 Order is but one of several factors used by the trial court and is therefore consistent with our Supreme Court's decision in *Peal*.

Therefore, the trial court properly considered the time since entry of the 2012 Order and the age of the minor children as part of its determination.

Plaintiff contends the trial court erred in Finding 54(f) because Plaintiff did not unilaterally act to terminate Defendant's visitation and instead that Defendant's visitation rights terminated under the 2012 Order when he consumed alcohol in front of the minor children. We disagree. The 2012 Order stated "[i]f the Defendant possess or consumes said intoxicating substances, then his visitations will terminate immediately and his father is to return the children to the Plaintiff until such time as further orders are entered by [the trial court]." The 2012 Order did not contemplate Plaintiff would have the sole authority to terminate Defendant's visitation. In fact, the 2012 Order named Defendant's father as the supervisor and, as such, designated him to "return the children to the Plaintiff until such time as further orders are entered by this Court[ ]" in the event Defendant consumed alcohol during a visitation. Therefore, the trial court vested the authority to terminate visitation with either a court-approved party—like Defendant's father—or by further order of the trial court, not with Plaintiff.

Furthermore, early in the morning of 27 November 2016, Plaintiff drove to Defendant's residence and instructed Carter and Bobby to leave without alerting Defendant. The Record evidences Defendant did not see his children from that time until the trial court's hearing and that he called Plaintiff over 200 times during that

same period and was only able to speak with his children on five occasions. As such, we conclude there is substantial evidence in the Record to support Finding 54(f)—that due to Plaintiff's unilateral decision "Defendant has not been able to see or speak regularly by phone with [his children] since November 2016 . . . ."

Plaintiff concedes the trial court's Findings 54(c)-(e) "may be redeeming factors" but states "they are not a substantial change of circumstances which would justify a modification of [the 2012 Order]." Therefore, the trial court's Findings that Defendant "is no longer exhibiting a drinking problem[,] . . . enjoyed unsupervised visits with [his children] for years without incident[, and] . . . has cared for his children that he shares with his current wife for years without incident[,]"are conclusive on appeal. Furthermore, we disagree with Plaintiff and instead conclude these Findings support the trial court's determination a substantial change in circumstances exists that affected the minor children.

The trial court found the fact Defendant no longer exhibits a drinking problem or suffers from alcohol abuse as a substantial change in circumstances. From this Finding and other evidentiary findings made by the trial court, it is evident the change positively impacts Defendant's ability to care for his children, as highlighted in the trial court's next Finding "Defendant enjoyed unsupervised visits with [his children] for years without incident until November 2016[.]" As Plaintiff notes in her brief, the 2012 Order focused heavily on Defendant's alcohol consumption in denying

his request for unsupervised visitation. Thus, the trial court's Finding—unchallenged on appeal—that Defendant no longer exhibits a drinking problem supports the trial court's determination that a substantial change in circumstances exists of which the effects are evident. *See Lang*, 197 N.C. App. at 750, 678 S.E.2d at 398. As such, the trial court did not need to find "evidence directly linking the change to the effect on the child[ren.]" *Id.* (citations and quotation marks omitted).

The trial court's Findings—"Defendant enjoyed unsupervised visits with [his minor children] for years without incident until November 2016[,]" Defendant has a "new child with his current wife," and his minor children have a strong bond with his new child and his wife's first child—support the conclusion that a substantial change in circumstances affected his minor children. At the time of the 2012 Order, Defendant had not remarried. However, his subsequent marriage and the birth of his daughter with his new wife are linked to an effect on his minor children in the trial court's Finding that a strong bond existed between them. That Finding is supported by competent evidence and evidences the substantial change in circumstances affected the minor children.

As such, the trial court's determination a substantial change in circumstances existed is supported by the Findings of Fact, which also supports the trial court's determination the substantial change in circumstances affected the welfare of the parties' minor children.

Plaintiff also challenges Findings 62, 64, 65, 66, 67, and 68 as erroneous and not supported by the evidence.[3] Although we conclude the trial court sufficiently demonstrated a substantial change in circumstances affected the welfare of the minor children, we briefly address Plaintiff's additional challenges. The trial court's Findings, in relevant part, are as follows:

> 62. However, the Court also finds everything that has transpired in this case since November 26, 2016 is a direct result of Plaintiff's poor decision making as it relates to the minor children.
>
> . . . .
>
> 64. Instead of speaking with the Defendant prior to retrieving the minor children, [Plaintiff] did it herself. That demonstrates poor-decision making by Plaintiff, and this poor decision-making was not in the best interests of the children[.]
>
> 65. Plaintiff's decision to completely cut off all communication and visitation with Defendant was not in the best interests of the minor children.
>
> 66. Plaintiff's decision not to notify Defendant of the oldest child's therapy, or involve him in any way was not in the child's best interests.
>
> 67. Any parent who completely severs a child's relationship with the other parent, barring extreme circumstances, has shown a clear inability to act in the children's best interests. There are no such extreme circumstances present in this case. Plaintiff

---

[3] The trial court acknowledged:

> There are or may be mixed findings of fact and conclusions of law or conclusions of law set forth in the [Findings of Fact] . . . as the Court must make mixed findings of fact and conclusions of law in determining the best interest of the minor children, the type of visitation and custody that should be awarded, and the amount of child support which should be awarded."

attempted to completely sever the children's relationship with Defendant, and has therefore shown an inability to act in the children's best interests.

68. Because of Plaintiff's poor decision making, the oldest minor child no longer wishes to have a relationship with his father of any kind.

The trial court's above Findings are supported by competent evidence in the Record. Namely, Plaintiff admits she utilized self-help to retrieve the minor children from Defendant's custody, without his knowledge, on the morning of 27 November 2016. The Record further reflects prior to 26 November 2016, Defendant was able to visit and communicate with his minor children regularly and without incident under the 2012 Order as modified by the parties. Yet, after the 26 November 2016 incident, Defendant did not see his children until the 11 June 2018 hearing and only spoke with them a combined five times. Despite the fact Defendant shared joint legal custody with Plaintiff and was to be informed of major medical decisions regarding their minor children under the 2012 Order, Plaintiff did not inform or consult with Defendant about Carter's mental health issues even though his therapist testified the 26 November 2016 event was a "major stressor" in his life. Moreover, Plaintiff did not inform Defendant of Bobby's dental surgeries or Carter's braces, and additional testimony elicited at trial indicated Carter no longer wishes to have a relationship with Defendant.

As such, we conclude there is competent evidence in the Record supporting the trial court's Findings Plaintiff attempted to completely sever the children's relationship with Defendant and that the events that transpired after 26 November 2016 are the result of Plaintiff's poor decision-making. Thus, the trial court sufficiently demonstrated a substantial change in circumstances affected the minor children.

*2. Best Interests*

Plaintiff contends the trial court incorrectly determined it was in the best interests of the minor children to grant Defendant primary physical and legal custody of the parties' younger son, entering a split custody arrangement. We disagree. "Trial courts are permitted to consider an array of factors in order to determine what is in the best interest of the child[,]" *Phelps v. Phelps*, 337 N.C. 344, 352, 446 S.E.2d 17, 22 (1994), and "[e]vidence of a parent's ability or inability to cooperate with the other parent to promote their child's welfare is relevant in a custody determination and material to determining the best interests of the child." *Cunningham v. Cunningham*, 171 N.C. App. 550, 559, 615 S.E.2d 675, 682 (2005). "As long as there is competent evidence to support the trial court's findings, its determination as to the child's best interests cannot be upset absent a manifest abuse of discretion." *Stephens*, 213 N.C App. at 503, 715 S.E.2d at 174 (citation and quotation marks omitted).

The trial court made Findings that the Defendant and the younger child "shared a strong relationship prior to November 26, 2016, and have maintained some phone contact since November 26, 2016. There was no evidence presented at trial that Defendant and the younger minor child currently have a strained relationship or unhealthy relationship." Further, the trial court found Plaintiff: cut off communication and visitation with Defendant and his minor children; did not notify Defendant of the older minor child's enrollment in therapy; and did not consult with Defendant regarding "how to proceed with such major medical procedures prior to them being carried out[ ]" for either of the minor children.

As this Court held, "[e]vidence of a parent's ability or inability to cooperate with the other parent . . . is relevant in a custody determination and *material* to determining the best interests of the child." *Cunningham*, 171 N.C. App. at 559, 615 S.E.2d at 682 (emphasis added). Moreover, "although interference alone is not enough to merit a change in the custody order, where interference with visitation becomes so pervasive as to harm the child's close relationship with the noncustodial parent, it may warrant a change in custody." *Stephens*, 213 N.C App. at 499, 715 S.E.2d at 172 (alterations, citations, and quotation marks omitted).

As previously discussed, the trial court's Findings reflect Plaintiff's inability to cooperate with Defendant and her interference with Defendant's visitation rights— Findings that are material to the trial court's decision regarding the best interests of

the minor children. The trial court determined the best interests of Carter were best served by ordering he remain with Plaintiff due to his damaged relationship with Defendant and, accordingly, ordering Defendant and Carter enroll in reunification therapy. However, the trial court determined that the best interests of Bobby were best served by granting Defendant primary physical and legal custody. The trial court's Findings support its determination that the best interests of Bobby are met by granting Defendant primary physical and legal custody because Plaintiff acted in opposition to the child's best interest when she attempted to completely sever the child's relationship with Defendant, which the trial court found to be strong, and by her demonstrated inability to cooperate with Defendant. "[T]he trial court 'need not wait for any adverse effects on the child to manifest themselves before the court can alter custody.'" *Id.* at 502-03, 716 S.E.2d at 174 (citation and quotation marks omitted). Therefore, we conclude the trial court did not abuse its discretion in ordering Defendant primary custody of Bobby.

Plaintiff additionally argues it was not in the best interests of the minor children to be separated and that the trial court did not consider the effect of separation on the best interests of the minor children. However, the trial court's 2018 Order evidences, in fact, that the trial court considered the effects of separation on the minor children. The trial court ordered: "In an effort to ensure both children still see each other and maintain their sibling relationship, the parties shall exchange the

children such that the minor children spend every weekend together . . . ." "Prior to school releasing for the summer, the parties shall work together to develop a schedule for the summer where . . . the children are together." From the language of the 2018 Order, we conclude the trial court contemplated the separation of the minor children in the 2018 Order and accordingly ordered visitation to account for the change. Thus, the trial court did not abuse its discretion, and we affirm the 2018 Order's modification of child custody.

## II. Contempt

We review a trial court's determination of civil contempt to determine "whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law." *Watson v. Watson*, 187 N.C. App. 55, 64, 652 S.E.2d 310, 317 (2007) (citation omitted). The trial court's findings of fact "are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing upon their sufficiency to warrant the judgment." *Id.* (citation and quotation marks omitted).

The trial court held Plaintiff in civil contempt of the 2012 Order for willfully violating two provisions. The trial court found Plaintiff violated the 2012 Order by denying Defendant reasonable telephone communication with his children and for failing to "consult as appropriate on major medical, educational, and religious decisions in the children's lives."

Plaintiff challenges the trial court's Findings 79, 80, 81, 82, 83, and 84 finding Plaintiff in contempt for her willful violation of Defendant's right to telephone visitation with his sons. The trial court found Defendant called Plaintiff over 200 times since 26 November 2016 and that she had answered five times. Plaintiff argued in response that Defendant's visitation, both in-person and telephone, terminated when he consumed alcohol in front of the parties' sons. Plaintiff erroneously relies on *Routten v. Routten* for her argument that electronic communication is an equal form of visitation. ___ N.C. App. ___, ___, 822 S.E.2d 436, 443 (2018), *disc. rev. denied,* ___ N.C. ___, 831 S.E.2d 77 (2019). *Routten*, however, simply points to N.C. Gen. Stat. § 50-13.2(e), which states "[e]lectronic communication with a minor child may be used to *supplement* visitation with the child. Electronic communication *may not* be used as a replacement or substitution for custody or visitation." N.C. Gen. Stat. § 50-13.2 (e) (2017) (emphasis added). As such, Plaintiff's contention that electronic communication is a form of visitation equal to that of in-person visitation is incorrect.

In addition, the 2012 Order addresses Defendant's right to electronic and in-person visitation separately. The 2012 Order grants Defendant supervised visitation on the condition that "[i]f the Defendant possesses or consumes said intoxicating substances, then his visitations will terminate immediately and his father is to return the children to the Plaintiff . . . ." In a separate paragraph, the 2012 Order provides "Defendant will be allowed reasonable telephone communication with his minor

children at reasonable times and for reasonable lengths . . . ." The trial court did not limit Defendant's telephone communication on his consumption of alcohol as it did his supervised visits. As such, the trial court correctly determined Plaintiff was in civil contempt for denying Defendant telephone communication provided to him by the 2012 Order.

The trial court also held Plaintiff was in civil contempt for failing to "consult as appropriate on major medical, educational, and religious decisions in the children's lives." Plaintiff did not challenge this portion of the 2018 Order finding her in civil contempt. Therefore, we affirm the trial court's 2018 Order holding Plaintiff in civil contempt of the 2012 Order.

### III. Child Support Modification

Plaintiff contends the trial court erred using Worksheet C, provided by the North Carolina Child Support Guidelines, to calculate Defendant's child support obligation because the trial court should not have ordered a split custody arrangement. Considering our previous conclusion, we disagree and hold it was correct for the trial court to use Worksheet C to calculate Defendant's child support obligation.

Next, Plaintiff argues the trial court committed "plain error" in its inclusion of a one-hundred-dollar-per-month health insurance credit and a one-hundred-dollar-per-month childcare credit to Defendant in its child support calculation. There is no

plain error review in civil trials. *Dogwood Dev. & Mgmt. Co., LLC, v. White Oak Transp. Co.,* 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (citation omitted) ("[P]lain error review is available in criminal appeals[.]"). Instead, a trial court's child support modification is reviewed for abuse of discretion. *See Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002).

Defendant contends, in brief, the parties consented to submit their proposed child support worksheets to the trial court after the trial court announced its award of split custody. This may well be true, but there is nothing in the Record before us reflecting Defendant's contention. Therefore, we are constrained to remand this matter to the trial court to make findings, supported by evidence and other materials properly before it, resolving this very limited issue of the appropriate health insurance and childcare cost credit to be given to Defendant in calculating his child support obligation.

## **Conclusion**

Accordingly, for the foregoing reasons, we affirm the trial court's conclusion there was a substantial change of circumstances justifying a modification in child custody. We also affirm the trial court's holding Plaintiff in civil contempt. We vacate the 2018 Order in part and remand this matter to the trial court for further proceedings to redetermine the appropriate health insurance and childcare cost credit Defendant should be given for his child support calculation.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

Judges ZACHARY and ARROWOOD concur.