An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-850

Filed 18 June 2025

Yancey County, No. 19 CVD 000113-990

JULIAN MATTHEW McMILLAN, Plaintiff,

v.

ELIZABETH ELLINGTON McMILLAN, Defendant.

Appeal by Defendant from order entered 28 February 2024 by Judge Hal G. Harrison in District Court, Yancey County. Heard in the Court of Appeals 25 February 2025.

*Hooks Law, PC, by Attorney Laura G. Hooks, for Plaintiff–Appellee.*

*Fairman Family Law, by Attorney Kelly S. Fairman, for Defendant–Appellant.*

MURRY, Judge.

Elizabeth E. McMillan ("Defendant" or "Mother") appeals from an order altering a preexisting custody arrangement with her ex-husband, Julian M. McMillan ("Plaintiff" or "Father"), for their two children, Pamela and John.[1] The order codifies

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor children by pseudonyms to protect their identities. *See* N.C. R. App. P. 42(b).

the trial court's determination that returning the children to the public school previously chosen by Defendant, as opposed to homeschool, would be in the best interest of the children. Defendant argues that the trial court erred in reaching this determination by relying on insufficient supporting evidence and by improperly determining the substantial change in circumstances. For the reasons below, this Court disagrees with Defendant and affirms the order.

## I.  Background

Plaintiff and Defendant, residents of Yancey County, North Carolina, have shared custody of their two children since divorcing on 29 June 2020. The initial custody arrangement specified that both Pamela and John must "attend school in the district of Plaintiff's residence[ ] unless otherwise agreed to . . . in writing." Both parties complied with this provision by sending Pamela to the local Micaville Elementary School until 4 February 2021, at which point they consented to a judicial modification of the original custody agreement to permit Pamela's homeschooling by Defendant "to avoid [the] risk of [COVID] infection." In this custody-modification order (2021 Order), the trial court found in relevant part that:

> 7.  Defendant met all the requirements required by the North Carolina Educational authorities for homeschooling the child.
> . . . .
> 9.  Plaintiff offered no evidence, and the Court does not find, that Burnsville Elementary is in any way superior to homeschooling or Micaville Elementary.

10. Home school provided stability and protection from the risk of COVID and did not require any virtual learning. The child thrived in the home school environment.

. . . .

12. The original order, if fully implemented, may place the child in a school that could be inferior and not in her best interest.

(Citation modified.) Based on these findings, the trial court concluded in the 2021 Order that the parties' original school-attendance requirement was "not in . . . [Pamela's] best interests" but that "[h]omeschooling . . . [wa]s in her best interests and welfare."

Over the next three years, Defendant continued to homeschool Pamela and began homeschooling John once he reached the appropriate age. By mid-2023, Plaintiff began to communicate to Defendant his concerns with their children's apparent lack of academic progress to-date, at least relative to their peers. The parents submitted both children to an administration of the Woodcock-Johnson IV Test of Achievement to determine their respective intellectual baselines, *i.e.*, their IQs. Both Pamela and John returned IQs normal for children their respective ages; however, Defendant seemingly misinterpreted the results as dyslexia diagnoses for both children and told them as much. When Defendant refused to place either child in public school, Plaintiff brought this action to further modify the 2021 Order.

At a 24 January 2024 trial, both parties adduced certain evidence in their favors. Professor Susan Stigall, Chair of the Mars Hill University Education Department, testified in Defendant's defense to observing her use of the "Classical

Conversations" curriculum in her home on 29 November 2023. Nicole White, a longtime special-needs kindergarten teacher and Plaintiff's fiancé, testified on his behalf to observing the children as "about two, maybe closer to three, years behind" their peers. White formally assessed the children's academic performance to-date in the summer of 2023, finding them appreciably lacking in core competencies. The trial court also took notice of the Individualized Educational Plans (IEPs) that Yancey County required of the children in January 2024, which found that they both "me[t] the disabling condition for specific learning disability."

On 4 February 2024, the trial court entered an order modifying the 2021 Order (2024 Order) also finding in relevant part that:

11. Both children are severely behind in their respective grade levels.
12. Pamela and John's overall academic achievement is limited when compared to others in their grades.
. . . .
20. Defendant, with no formal educational training, unilaterally selected the children's curriculum and consistently taught them a language-arts curriculum below grade level.
. . . .
30. On 19 January 2024, the IEP team for Yancey County Public Schools implemented an IEP each for both Pamela and John.
. . . .
38. It is appropriate for the minor children to attend Micaville Elementary. The school is familiar to the family due to Pamela's previous kindergarten enrollment and already involved due to the IEP process.
. . . .
44. Plaintiff and Defendant are fit and proper to exercise the custody provisions decreed herein.

45. The foregoing substantial and material changes in circumstances warrant modification of the 2021 Order.

(Citation modified.) Based on these findings, the trial court concluded that "[h]omeschooling is no longer appropriate . . . [or] in the best interests of the minor children." It also concluded that "immediate[ ] enroll[ment] in . . . public school, specifically Micaville Elementary," would be "in th[ose] best interests." Defendant timely appealed the 2024 Order on 28 March 2024.

## II.    Jurisdiction

This Court has jurisdiction to hear Defendant's appeal of the trial court's 2024 Order because it is the "final judgment of a district court in a civil action" that purports to resolve the schooling dispute between the two parties. N.C.G.S. § 7A-27(b)(2) (2023).

## III.    Analysis

Defendant argues on appeal that the trial court reversibly erred in concluding "that public school is in the best interest of" the two children. To support this contention, she asserts that "insufficient evidence" supports the finding that homeschooling caused "the children's lack of academic progress" to-date. She also claims that the trial court failed to "clearly identify what circumstances had changed since . . . the last custody order" that would otherwise justify its disposition. We review a trial court's child-custody modification for "findings of fact . . . supported by substantial, competent evidence." *Karger v. Wood*, 174 N.C. App. 703, 705 (2005)

(citing *Shipman v. Shipman*, 357 N.C. 471, 473 (2003)). The trial court must clearly abuse its "broad discretion in cases involving child custody" to merit disturbance on appeal, *id.* (quoting *Pulliam v. Smith*, 348 N.C. 616, 625 (1998)); however, we review its conclusions of law *de novo*, *Scott v. Scott*, 157 N.C. App. 382, 385 (2003). For the reasons below, this Court affirms the trial court's 2024 Order modifying the parties' custody arrangement for their children.

North Carolina has long recognized the fundamental right of a parent to educate her children according to her conscience. *See* N.C. Const. of 1776 § 45 ("[A]ll useful learning shall be duly encouraged and promoted . . . ."); N.C. Const. of 1868 art. IX, § 17 ("[E]very child of sufficient . . . ability[ ] shall attend the [p]ublic [s]chools . . . *unless educated by other means.*" (emphasis added)); N.C. Const. of 1970 art. IX, § 3 (identical language to 1868 Constitution's own School Attendance Clause). This constitutional principle includes the right to homeschool one's own children, subject to certain minimum standards. *See Pierce v. Society of the Sisters*, 268 U.S. 510, 534–35 (1925) (incorporating to the States the fundamental right to parent one's children through the Fourteenth Amendment's Due Process Clause), *approvingly cited in State v. Williams*, 253 N.C. 337, 341–42 (1960) (recognizing "vested property and occupational right" to nonpublic schooling "which may not be arbitrarily infringed" under N.C. Constitution). *See generally* N.C.G.S. §§ 115C-563 to -565.1 (establishing statutory homeschooling requirements). Neither *Pierce* nor *Williams* directly address a trial court's authority to order where children must attend school when the parents

- 6 -

disagree. Because the Federal and State Constitutions protect the right of parents to determine the means of their children's education, *Williams*, 253 N.C. at 347–48, we recognize that trial courts can resolve the children's "best interests" when the parents cannot agree on where to educate them.

Trial courts must yield to a child's "best interest" where necessary. *See Metz v. Metz*, 138 N.C. App. 538, 541 (2000) ("In custody matters, the trial court, under the doctrine of *parens patriae*, may preclude or otherwise limit certain educational options when the circumstances are appropriate."). When parents disagree on where or how to educate their children, a trial court must resolve the conflict in favor of the *children's* "best interests." Under N.C.G.S. § 50-13.7 more specifically, a trial court may "modif[y] or vacate[ ] at any time" a child-custody order "upon . . . a showing of changed circumstances by either" parent. N.C.G.S. § 50-13.7(a) (2023). Through "a commonsense interpretation of the legislative intent," our courts have "added by judicial decisions" the requirement that any change of circumstances be "substantial." *Pulliam*, 348 N.C. at 629 (Orr, J., concurring in the result); *see* N.C.G.S. § 50-13.01(1) ("It is the policy of the State of North Carolina to . . . promote the best interest of the child."). If the trial court finds "competent evidence in the record to support" these substantial changes, it must then "consider whether a change in [a] custody [arrangement] would be in the best interests of the child." *Metz*, 138 N.C. App. at 541.

## A. Substantial Change

First, Defendant asserts that insufficient evidence supports the trial court's finding that homeschooling caused "the children's lack of academic progress." We disagree only to the extent that she characterizes the "sole evidence to the homeschooling curriculum" as entirely "positive."

Under the "twofold" analysis of custody modifications noted above, a trial court must first determine whether a "substantial change" has occurred that "affect[s] the minor child's welfare." *Shipman*, 357 N.C. at 474. If a "discrete set of circumstances" caused the substantial change, then a trial court must document in its modification order "evidence *directly* linking the change to the welfare of the child" at issue. *Id.* at 478 (citing 3 Suzanne Reynolds et al., *Lee's North Carolina Family Law* § 13.103 (5th rev. ed. 2002). We believe the trial court did so here.

Few events so substantially changed children's lives as did COVID-19 pandemic, which qualitatively damaged the educational prospects of those caught in its dragnet of state-imposed school closures.[2] In a good-faith attempt to mitigate these risks, the trial court initially allowed Pamela and John's homeschooling because Defendant "decided it would be [a] safer" way to "avoid risk of [COVID] infection." As

---

[2] *E.g.*, Jeffrey Blehar, *I Can Only Look Back in Anger*, Nat'l Rev. (Mar. 12, 2025), https://www.nationalreview.com/2025/03/i-can-only-look-back-in-anger/ (last visited Jun. 9, 2025) (articulating struggles with mask mandates for child with speech-processing disability); David Zweig, *The Disaster of School Closures Should Have Been Foreseen*, Atlantic (Apr. 12, 2025) (quoting Thomas V. Inglesby et al., *Disease Mitigation Measures in the Control of Pandemic Influenza*, 4 Biosec. & Bioterrorism: Biodef. Strat., Prac., & Sci. 325, 368 (2006)), https://www.theatlantic.com/health/archive/2025/04/school-closures-predictable-disaster/682431/ (last visited Jun. 9, 2025) ([M]illions of children . . . los[t] ground with their academics.").

early as February 2021, it contemporaneously found "no evidence . . . that . . . [e]lementary [school] is in any way superior to homeschool[ ]." Both parties and the trial court proceeded apace from this new pedagogical status quo by soliciting from Yancey County an IEP "from Micaville Elementary for each child." The trial court went so far as to conclude that homeschooling Pamela would be "in her best interests and welfare." (Quoting N.C.G.S. § 50-13.1(a)–(b) (2023).)

The parties and the same trial-court judge regularly tracked the children's academic progress over the next two years and found it lacking. Each child's IQ test in 2023 revealed intellectual capacities substantially far beyond their respective academic milestones to-date, thus implying at least *some* cause for pedagogical concern external to the children. The trial court found both Pamela and John's "overall academic achievement[s]" to be "very limited when compared to others in th[eir] grade[s]" despite Defendant's use of the required IEP from the local public-school system. It also found that that Defendant inappropriately inferred from the IQ-test results diagnoses of dyslexia in her children—a conclusion at odds with the Woodcock-Johnson Test's express purpose. We acknowledge Professor Stigall's expertise in homeschooling best practices; however, we also recognize Ms. White's similar authority in public schools.

Faced with these dueling authorities, we cannot say Defendant overrides Plaintiff's countervailing evidence that the children's homeschooling contributed to their academic delays. Pamela left Micaville Elementary in her kindergarten year

and John has only ever been homeschooled. Defendant unilaterally selected the children's curriculum and taught them language arts below grade level. Defendant testified that "she met her children where they were" as their teacher, and the trial court found no evidence that she academically challenged her children. The children now read and spell below grade level. The trial court sufficiently documented their lack of academic progress through the accumulation of academic testing results, the children's respective IEPs, and Ms. White's direct testimony about their three-year delay in literacy. Given the young children's lack of academic progress, the trial court rationally concluded that homeschooling was no longer appropriate.

Based on a *de novo* review, this lack of academic progress is a substantial "change[ ] [of] circumstances" compared to those that justified the 2021 Order. N.C.G.S. § 50-13.7(a). This Court holds that the trial court's conclusion of law relies on the substantial evidence described above and thus affirms the order returning the children to Micaville Elementary, the public school previously chosen by Defendant.

## B. Best Interests

Second, Defendant asserts that the trial court erred as a matter of law in concluding that "public school is in the best interest" of both Pamela and John. We review this conclusion *de novo, see Tuel v. Tuel,* 270 N.C. App. 629, 631–32 (2020) (citing N.C.G.S. § 50-13.2(a) (2019)), and similarly hold that the trial court based this conclusion on "substantial evidence" and its direct, long-term familiarity with the facts on the ground, *cf., e.g., In re Custody of Peal,* 305 N.C. 640, 646 (1982)

(acknowledging that trial court did not "abuse its discretion in ordering what [it] considered to be best for" minor at issue).

As noted above, a trial court must conclude "whether a modification of custody [i]s in [a] child's best interest" when it first finds that a "substantial change in circumstances . . . affected" him or her. *Shipman*, 357 N.C. at 475 (citing *Pulliam*, 348 N.C. at 628). Chapter 50, Article 1 of the General Statutes permits a trial court to modify a custody arrangement in this context only to "promote the interest and welfare of the child[ren]" at issue. N.C.G.S. § 50-13.2(a)–(b) (2023); *see id.* § 50-13.7(a).

We analogize this case to *In re Custody of Peal*, where our Supreme Court upheld a trial court's custody modification in relevant part because the same judge "presided over the custody actions involving the [parties'] children" multiple times over several years. *Peal*, 305 N.C. at 646. In *Peal*, the petitioner–father and respondent–mother shared custody of their son and daughter, then-aged nine and five, respectively. *Id.* at 641. After the son "refused to return to his mother's residence" a year later in 1977, a trial-court judge awarded primary custody of their son to the father. *Id.* The judge found "both parents [to be] 'fit and proper persons,' " but still "concluded as a matter of law" that paternal custody would be in the son's "best interests." *Id.* at 641–42.

The same judge heard the father's motion for primary custody of the daughter three years later. *Id.* at 642. That judge again determined that "a material change in

- 11 -

circumstances" led to the legal conclusion that awarding the father "primary custody" "of *both* children" "would 'best promote the[ir] interest and welfare.' " *Id.* at 642. The Supreme Court reversed this Court's rejection of the judge's second award on appeal, reasoning that he "was thoroughly acquainted with the whole situation" between the father and mother over the course of several years and thus "well[-]qualified to determine . . . the best interests of both children." *Id.* at 646. The Supreme Court also pointed out that the trial-court judge "made it plain in the 1980 order that he would have awarded both children to the father in 1977" had the daughter "not been so young then." *Id.* at 646–47 (emphasis omitted). So too with the trial court's recognition in the 2024 Order that it "previously sanctioned homeschooling for the children," both of whom Mother and Father here are still "fit and proper" to parent.

Sufficient evidence supports the trial court's 2024 Order to enroll both children at Micaville Elementary. Defendant enrolled Pamela at Micaville Elementary for the 2019–2020 school year. Defendant approved Micaville Elementary as an alternative to homeschool in lieu of Burnsville Elementary, where Plaintiff had enrolled the children without Defendant's input. Here, the trial court concluded that "[h]omeschooling is no longer appropriate" and that "immediate[ ] enroll[ment] in . . . public school, specifically Micaville Elementary," would be in "the best interests of the minor children." Although a reasonable jurist could—and, via the 2021 Order, did —reach the opposite conclusion, our State vests its trial courts with "broad discretion in cases involving child custody." *Pulliam*, 348 N.C. at 62 (citing *Peal*, 305 N.C. at

645). The record contains multiple examples of the trial court applying this discretion responsibly, most starkly by affording Defendant in its 2021 Order her homeschooling authority in the first place. No court may "arbitrarily infringe[ ]" upon the parties' "vested . . . right[ ]" to educate their children as they see fit. *Williams*, 253 N.C. at 341. The trial court's documented respect in the 2021 Order for Defendant's desire to homeschool her children shows that it did not "arbitrarily infringe[ ]" on fundamental parental rights in this case. *Id.* (citing *Pierce*, 268 U.S. at 536). It was faced with a choice: continue the children in homeschool with Defendant or enroll them in public school. Thus, this Court holds that the trial court did not err in concluding that returning the children to the public school previously chosen by Mother was in their best interests.

## IV. Conclusion

This case is not a referendum on homeschooling. For thousands of North Carolina families, homeschooling is a suitable alternative to other forms of education. But trial courts must resolve the conflict in the best interests of the children when their parents disagree on how to educate them. For the reasons above, our *de novo* review affirms the trial court's conclusion: (1) the lack of academic progress is a substantial change that affects Pamela and John's welfare and (2) returning Pamela and enrolling John at Micaville Elementary is in their best interests. Our holding should not be construed to prevent either parent from seek future alterations upon showing "a substantial change of circumstances." *Shipman*, 357 N.C. at 474.

AFFIRMED.

Judge TYSON concurs.

Judge WOOD concurs in a separate opinion.

Report per Rule 30(e).

An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

No. COA24-850 – *McMillan v. McMillan*

WOOD, Judge, concurring.

North Carolina has firmly established that a parent "has a constitutionally protected liberty interest in the companionship, custody, care and control of his or her child." *Adams v. Tessener*, 354 N.C. 57, 61, 550 S.E.2d 499, 502 (2001) (cleaned up). Likewise, North Carolina has long recognized the fundamental rights of parents to educate their children according to their conscience. *See* N.C. Const. Art. IX § 1 ("[T]he means of education shall forever be encouraged."); N.C. Const. Art. IX, § 3 ("[E]very child of sufficient . . . ability[ ] shall attend the [p]ublic [s]chools . . . *unless educated by other means*." (emphasis supplied)).

The issue before us today arises from the inability of the two "fit and proper" parents to agree on the selection of the educational option – public school or homeschool – to meet the best interests and needs of their children. In his Motion for Modification for Child Custody, Plaintiff requested sole authority to choose where "the minor children shall attend school, . . ." and explicitly requested the children attend Micaville Elementary School at the hearing. Defendant desired to continue homeschooling their children. Once the trial court determined a substantial change of circumstances existed to warrant modification of the existing child custody order,

its task became the determination of which requested alternative would be in the best interests of the children.

"[I]n child custody cases, the General Assembly has granted our district courts broad discretion and authority to (1) award custody of a child (and enforce such awards), (2) order visitation for the noncustodial parent, and (3) resolve 'certain other related matters.'" *Kanellos v. Kanellos*, 251 N.C. App. 149, 157, 795 S.E.2d 225, 231–32 (2016) (cleaned up). This Court has held other "related matters" may include educational issues. *Elrod v. Elrod*, 125 N.C.App. 407, 411, 481 S.E.2d 108, 111 (1997).

In the present case, the trial court utilized its inherent authority to choose between the two educational options presented by the parties because they could not agree on how their children should be educated. As the majority states, this case is not a referendum on homeschooling. For thousands of North Carolina families, homeschooling is a suitable alternative to other forms of education. However, in making the difficult determinations between alternatives, "the welfare of the child has always been the polar star which guides the courts . . . ." *Pulliam v. Smith*, 348 N.C. 616, 619, 501 S.E.2d 898, 899 (1998). The trial court was well within its authority to utilize its discretion to determine which educational option, Micaville Elementary School or homeschooling, would meet the best interests of the children. Further, the trial court's ruling allowed the children to quickly enroll in school, preventing further delays in their education.

The trial court properly made the decision between the only educational

options presented to the court by the parents. The facts of this case suggest a strong likelihood that only disagreement and litigation would follow if the trial court did not make the choice the parents were unable to make, further delaying the educational advancement of the children whom both parties agreed were already significantly behind their respective grade levels.

For the foregoing reasons, I fully concur in the majority opinion holding the trial court neither abused its discretion in finding a substantial change affected the welfare of the children warranting a modification of custody nor erred in determining public-school attendance, and specifically which school, would be in their best interests. I write separately to clarify that this case is not about school choice or the constitutional rights of parents to decide their children's education. This case is about the authority and responsibility of the trial court to make decisions about the best interests of children when the parents are unable to agree.